# CASES ADJUDGED

IN THE

# SUPREME COURT OF THE UNITED STATES

AT

## OCTOBER TERM, 1911.

————————

## SECOND EMPLOYERS' LIABILITY CASES.

## MONDOU v. NEW YORK, NEW HAVEN & HART-FORD RAILROAD CO.

ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE OF CONNECTICUT.

## NORTHERN PACIFIC RAILWAY CO. v. BABCOCK.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

## NEW YORK, NEW HAVEN & HARTFORD RAIL-ROAD CO. v. WALSH.

## WALSH v. NEW YORK, NEW HAVEN & HARTFORD RAILROAD CO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Nos. 120, 170, 289, 290. Argued February 20, 21, 1911.—Decided January 15, 1912.

The Employers' Liability Act of April 22, 1908, 35 Stat. 65, c. 149, as amended April 5, 1910, 36 Stat. 291, c. 143, regulating the liability of common carriers by railroad to their employés, is constitutional. Congress may, in the execution of its power over interstate commerce, regulate the relations of common carriers by railroad and their employés while both are engaged in such commerce.

(1)

Congress has not exceeded its power in that regard by prescribing the regulations embodied in the Employers' Liability Act.

Those regulations have superseded the laws of the several States in so far as the latter cover the same field.

Rights arising under the regulations prescribed by the act may be enforced, as of right, in the courts of the States, when their jurisdiction, as fixed by local laws, is adequate to the occasion.

Congress, in the exertion of its power over interstate commerce, and subject to the limitations prescribed in the Constitution, may regulate those relations of common carriers by railroad and their employés which have a substantial connection with interstate commerce and while both carrier and employé are engaged therein.

A person has no property—no vested interest—in any rule of the common law. While rights of property created by the common law cannot be taken without due process, the law as a rule of conduct may, subject to constitutional limitations, be changed at will by the legislature.

Under the power to regulate relations of employers and employés while engaged in interstate commerce, Congress may establish new rules of law in place of common-law rules including those in regard to fellow-servants, assumption of risk, contributory negligence, and right of action by personal representatives for death caused by wrongful neglect of another.

In regulating the relations of employers and employés engaged in interstate commerce, Congress may regulate the liability of employers to employés for injuries caused by other employés even though the latter be engaged in intrastate commerce.

The power of Congress to insure the efficiency of regulations ordained by it is equal to the power to impose the regulations; and prohibiting the making of agreements by those engaged in interstate commerce which in any way limit a liability imposed by Congress on interstate carriers does not deprive any person of property without due process of law, or abridge liberty of contract in violation of the Fifth Amendment.

*Quære:* Whether an element of the due process provisions of the Fifth Amendment is the equivalent of the equal protection provision of the Fourteenth Amendment.

A classification of railroad employés, even if including all employés, whether subjected to peculiar hazards incident to operation of trains or not, is not so arbitrary or unequal as to amount to denial of equal protection of the laws. Such a classification does not vio-

late the due process clause of the Fifth Amendment even if equal protection is an element of due process.

State legislation, even if in pursuance of a reserved power, must give way to an act of Congress over a subject within the exclusive control of Congress.

Until Congress acted on the subject, the laws of the several States determined the liability of interstate carriers for injuries to their employés while engaged in such commerce; but Congress having acted, its action supersedes that of the States, so far as it covers the same subject. That which is not supreme must yield to that which is.

The inaction of Congress on a subject within its power does not affect that power.

Rights arising under an act of Congress may be enforced, as of right, in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion.

When Congress, in the exertion of a power confided to it by the Constitution, adopts an act, it speaks for all the people and all the States, and thereby establishes a policy for all, and the courts of a State cannot refuse to enforce the act on ground that it is not in harmony with the policy of that State. *Claflin* v. *Houseman*, 93 U. S. 130.

A state court cannot refuse to enforce the remedy given by an act of Congress in regard to a subject within the domain of Congress on the ground of inconvenience or confusion.

The systems of jurisprudence of the State and of the United States together form one system which constitutes the law of the land for the State.

The United States is not a foreign sovereignty as regards the several States but is a concurrent and, within its jurisdiction, a paramount sovereign. *Claflin* v. *Houseman*, 93 U. S. 130.

Existence of jurisdiction in a court implies the duty to exercise it notwithstanding such duty may be onerous.

82 Connecticut, 373, reversed; 173 Fed. Rep. 494, affirmed.

No. 120 (*Mondou* v. *New York, New Haven & Hartford Railroad Co.*).

THIS was an action by a citizen of Connecticut against a railroad corporation of that State to recover for personal injuries suffered by the plaintiff while in the defendant's service. The injuries occurred in Connecticut August 5, 1908, the action was commenced in one of the Superior Courts of that State in October following, and the right

of action was based solely on the act of Congress of April 22, 1908 (35 Stat. 65, c. 149). According to the complaint, the injuries occurred while the defendant, as a common carrier by railroad, was engaged in commerce between some of the States and while the plaintiff, as a locomotive fireman, was employed by the defendant in such commerce, and the injuries proximately resulted from negligence of the plaintiff's fellow servants, who also were employed by the defendant in such commerce. A demurrer to the complaint was interposed upon the grounds, first, that the act of Congress was repugnant in designated aspects to the Constitution of the United States, and, second, that even if the act were valid a right of action thereunder could not be enforced in the courts of the State. The demurrer was sustained, judgment was rendered against the plaintiff, the judgment subsequently was affirmed by the Supreme Court of Errors of the State (82 Connecticut, 373) upon the authority of *Hoxie* v. *N. Y., N. H. & H. R. Co.*, 82 Connecticut, 352, and the plaintiff then sued out the present writ of error.

No. 170 (*Northern Pacific Railway Co.* v. *Babcock*).

This was an action by the personal representative of a deceased employé of a railroad corporation to recover, for the exclusive benefit of the surviving widow, for the death of the employé, which resulted from an injury suffered in the course of his employment. The injury and death occurred in Montana, September 25, 1908, the action was commenced in the Circuit Court of the United States for the District of Minnesota, October 4, 1909, and the right of action was based solely on the act of Congress before mentioned. It appeared, from the complaint, that the injury occurred while the defendant, as a common carrier by railroad, was engaged in commerce between some of the States, and while the deceased, as a locomotive fireman, was employed by the defendant in

such commerce; that the injury proximately resulted from negligence of fellow servants of the deceased, who also were employed by the defendant in such commerce; that the deceased resided in Montana and died without issue or a surviving father or mother, but leaving a widow and also a sister, and that if the statutes of Montana were applicable the recovery should be for the equal benefit of the widow and sister, and not for the exclusive benefit of the widow, as prayed in the complaint and as provided in the act of Congress. The defendant challenged the validity of the act by a demurrer to the complaint, and in the subsequent proceedings insisted that the recovery, if any, should be for the benefit of the widow and sister jointly and not for the benefit of the widow alone, but the demurrer and the insistance were overruled and judgment was rendered for the plaintiff for the exclusive benefit of the widow, as prayed. By a direct writ of error the defendant seeks a reversal of that judgment.

Nos. 289, 290 (*Walsh* v. *New York, New Haven and Hartford R. R. Co.; New York, New Haven and Hartford R. R. Co.* v. *Walsh*).

These writs of error relate to the judgment in a single case. It was an action by the personal representative of a deceased employé of a railroad corporation to recover, for the benefit of the surviving widow and children, for the death of the employé, which resulted from an injury suffered in the course of his employment. The injury and death occurred in Connecticut, February 11, 1909, the action was commenced in the Circuit Court of the United States for the District of Massachusetts in July following and the right of action asserted in the second count of the declaration was based on the act of Congress before mentioned. There were several other counts, but they may be passed without special notice. It was charged in the second count that the injury occurred while the de-

fendant, as a common carrier by railroad, was engaged in commerce between some of the States and while the deceased, in the course of his employment by the defendant in such commerce, was engaged in replacing a drawbar on one of the defendant's cars then in use in such commerce, and that the injury proximately resulted from negligence of fellow servants of the deceased in pushing other cars against the one on which he was working. A demurrer to that count challenged the validity of the act of Congress, but the demurrer was overruled. The defendant answered, putting in issue all that was stated in that count, and also alleging that the deceased, by his own negligence, contributed to the injury which resulted in his death and therefore that the damages should be diminished in proportion to the amount of negligence attributable to him. A trial to the court and a jury resulted in a verdict and judgment for the plaintiff upon the second count, and there was a judgment for the defendant upon the other counts. Each party has sued out a direct writ of error from this court. The defendant calls in question the ruling upon its demurrer and other rulings in the progress of the cause, notably such as related to the nature of the employment in which the deceased and the fellow servants whose conduct was in question were engaged at the time of the injury and to the admeasurement of the damages. The plaintiff makes no complaint of the judgment upon the second count and, if it shall be affirmed, wishes to waive her objections to the judgment upon the other counts.

The act whose validity is drawn in question, 35 Stat. 65, c. 149, and the amendment of April 5, 1910, 36 Stat. 291, c. 143, are as follows:

"An Act Relating to the liability of common carriers by railroad to their employés in certain cases.

"Be it enacted by the Senate and House of Representatives

*of the United States of America in Congress assembled,* That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"SEC. 2. That every common carrier by railroad in the Territories, the District of Columbia, the Panama Canal Zone, or other possessions of the United States shall be liable in damages to any person suffering injury while he is employed by such carrier in any of said jurisdictions, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"SEC. 3. That in all actions hereafter brought against

any such common carrier by railroad under or by virtue of any of the provisions of this Act to recover damages for personal injuries to an employé, or where such injuries have resulted in his death, the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé; *Provided*, That no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

"SEC. 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

"SEC. 5. That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employé or the person entitled thereto on account of the injury or death for which said action was brought.

"SEC. 6. That no action shall be maintained under this Act unless commenced within two years from the day the cause of action accrued.

"SEC. 7. That the term 'common carrier' as used in

this Act shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.

"Sec. 8. That nothing in this Act shall be held to limit the duty or liability of common carriers or to impair the rights of their employés under any other Act or Acts of Congress, or to affect the prosecution of any pending proceeding or right of action under the Act of Congress entitled 'An Act relating to liability of common carriers in the District of Columbia and Territories, and to common carriers engaged in commerce between the States and between the States and foreign nations to their employés' approved June eleventh, nineteen hundred and six.

"Approved April 22, 1908."

"An Act to Amend an Act entitled 'An Act relating to the liability of common carriers by railroad to their employés in certain cases,' approved April twenty-second, nineteen hundred and eight.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That an Act entitled 'An Act relating to the liability of common carriers by railroad to their employés in certain cases,' approved April twenty-second, nineteen hundred and eight, be amended in section six so that said section shall read:

"Sec. 6. That no action shall be maintained under this Act unless commenced within two years from the day the cause of action accrued.

"Under this Act an action may be brought in a circuit court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this Act shall be concurrent with that of the courts of the several States, and no case

arising under this Act and brought in any state court of competent jurisdiction shall be removed to any court of the United States.

"SEC. 2. That said Act be further amended by adding the following section as section nine of said Act:

"SEC. 9. That any right of action given by this Act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé, and if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, but in such cases there shall be only one recovery for the same injury.

"Approved, April 5, 1910."

*Mr. Donald G. Perkins* for plaintiff in error in No. 120:

The act of 1906 was held unconstitutional by this court because it could not by construction write into the act words to make it read, "Any employé *when engaged in interstate commerce*," which express words of limitation if contained in the act, it was conceded, would have rendered it constitutional. Congress in passing the act of 1908 adopted this suggestion and used express words of limitation to meet the views of the court.

So far as the substantive right goes the act of 1908 does not differ from the act of 1906 and was within the power of Congress under the decision of this court, and it is unnecessary to cite the cases and repeat the argument there considered. Thornton Employers' Liability Acts, §§ 7, 10, *et seq.; Employers' Liability Cases*, 207 U. S. 463; and see *Adair* v. *United States*, 208 U. S. 178.

The power to create the liability necessarily includes the power to change any and all rules in existence in relation to the liability of master to servant at common law or under state statutes.

Even the rules of the common law limited the power of the carrier to free itself entirely by contract from liability

for its negligence in the carriage of passengers and freight, and the legislative power of Congress, assuming the matter is within its sphere, includes the right to change these rules of the common law and create a new and different rule. *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Railroad Co.* v. *Stevens*, 95 U. S. 655; *Liverpool S. S. Co.* v. *Phœnix Ins. Co.*, 129 U. S. 397; *Employers' Liability Cases*, 207 U. S. 492; *United States* v. *D. H. R. R. Co.*, 213 U. S. 405.

There is no violation of constitutional privilege, because the act applies to railroad interstate carriers alone. *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205.

The act of Congress did not create an original jurisdiction in the Superior Court but it did create a substantial right which accrued to a citizen of Connecticut, and the Superior Court as a court of general jurisdiction had jurisdiction to adjudicate the right. *Ex parte McNeil*, 13 Wall. 423; *Cook* v. *Whipple*, 55 N. Y. 164; *Claflin* v. *Houseman*, 13 Wall. 137.

Congress intended that the state courts should exercise a concurrent jurisdiction, and that the jurisdiction of the Circuit Court shall be concurrent with that of the state courts in actions under this act, which was merely declaratory of the law as it existed. See amendment of 1910, Public No. 117, H. R. 17,263.

It was evidently the intent of Congress that the state court should have a concurrent jurisdiction, for unless this is so a party having a claim of less than $2,000 would be without a remedy, for the Circuit Court of the United States has no jurisdiction where the damages claimed are less than $2,000. See act, March 3, 1875, c. 137, § 1, 18 Stat. 470; § 969, U. S. Stat; act of 1887–8; 24 Stat. 552 and 25 Stat. 443.

The power to regulate interstate commerce is one of the powers which the State surrendered to the United States; and assuming that the act in question is constitutional and within the power of Congress to regulate in-

terstate commerce, then the power of Congress is supreme and paramount to that of the State and supersedes the law and policy of the State of Connecticut on the same subject, so that the State has no law and no policy on this subject except the act of Congress. *Sinnott* v. *Davenport et al.*, 22 How. 242; *Gulf &c. R. R. Co.* v. *Helfley*, 158 U. S. 98, 103; *Atl. &c. Tel. Co.* v. *Philadelphia*, 190 U. S. 160, 162; *Miss. R. R. Comrs.* v. *Ill. Central R. R.*, 203 U. S. 335; *El Paso &c. Ry. Co.* v. *Gutierrez*, 215 U. S. 87.

The oath of office of the judges of the Connecticut Supreme Court requires them to support the Constitution of the United States.

Even in enforcing transitory actions either in contract or tort arising under the laws of a foreign State, which is done as an act of comity between foreign States, the fact that the foreign law is different is not sufficient to prevent jurisdiction. *Walsh* v. *N. Y. & N. E. R. R. Co.*, 160 Massachusetts, 571; *Nor. Pac. Ry. Co.* v. *Babcock*, 154 U. S. 197; *Dennick* v. *R. R. Co.*, 103 U. S. 18.

Even if the plaintiff's right of action were to be treated as arising under the laws of a foreign State, the Connecticut court could not deny him a remedy from mere whim or because the judges did not like the law, but it could only be done on established principles of law governing all cases, that to grant him his remedy would be against the public policy or interests of the State, not simply against the interest of the defendant, and the following cases show that the conclusion of the court that it could not entertain jurisdiction was unsound and not in accord with established principles. *Dennick* v. *Railroad Co.*, 103 U. S. 18; *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205; *Huntington* v. *Attrill*, 146 U. S. 657; *Northern Pacific R. R. Co.* v. *Babcock*, 154 U. S. 190; *Ward* v. *Jenkins*, 10 Metc. 588; *Higgins* v. *Railroad Co.*, 155 Massachusetts, 176; *Walsh* v. *Railroad Co.*, 160 Massachusetts, 571; *King* v. *Sarria*, 69 N. Y. 31; *Leonard* v. *Columbia & Co.*, 84 N. Y.

48; *Stoeckman* v. *T. H. & R. R. Co.*, 15 Mo. App. 503; *C. & O. R. R. Co.* v. *Am. Ex. Bank*, 92 Virginia, 154.

But the plaintiff's case is much stronger than if he were suing under a foreign law because the whole foundation of the comity rule as to transitory actions is the principle that the law of a State has no extraterritorial force and therefore can be enforced not of right but only as an act of comity, while this plaintiff is a citizen of Connecticut and sues in the courts of his own State on a cause of action arising in the State under the act of Congress, which is the supreme law of Connecticut, and governs the public policy of the State on that point. *Blythe* v. *Hinckley*, 173 U. S. 508; *Claflin* v. *Houseman*, 93 U. S. 136.

This is a right under United States law just as much as is a discharge in bankruptcy granted by a court of the United States under the United States bankrupt law and such a discharge is valid in the courts of all the States, *Hanover Nat. Bank* v. *Moyses*, 186 U. S. 181, and the denial of the right presents a Federal question. *Strader* v. *Baldwin*, 9 How. 261; *El Paso &c. Ry. Co.* v. *Gutierrez*, 215 U. S. 87. *St. Louis &c. R. R. Co.* v. *Taylor*, 210 U. S. 285, distinguished.

The Connecticut Supreme Court had no power to legislate or establish the public policy of the State but its duty was to declare the law and it was bound by the Constitution and laws of the United States. That the plaintiff was entitled to maintain his action in the state court is established by *Ex parte McNeil*, 13 Wall. 243; *Teal* v. *Felton*, 12 How. 292; *Claflin* v. *Houseman*, 93 U. S. 136; *Charlotte Nat. Bank* v. *Morgan*, 132 U. S. 141, 144; *Defiance Water Co.* v. *Defiance*, 191 U. S. 184; *Raisler* v. *Oliver*, 97 Alabama, 710; *Ordway* v. *Central Nat. Bank*, 47 Maryland, 245; *Schuyler Nat. Bank* v. *Bollong*, 24 N. W. 827; *Singer* v. *Bedstead Co.*, 65 N. J. Eq. 293; *Cook* v. *Whipple et al.*, 55 N. Y. 164; *People* v. *Welch*, 141 N. Y. 273; *Bletz* v. *Columbia Nat. Bank*, 87 Pa. St. 87; *Hartley*

v. *United States*, 3 Hayw. (Tenn.) 45; *Kansas City &c.* v. *Flippo*, 138 Alabama, 487; *Mobile &c. Ry.* v. *Bramberg*, 141 Alabama, 258; *Wilson* v. *Southern Ry. Co.*, 172 Fed. Rep. 478.

*Mr. Edward D. Robbins*, with whom *Mr. Joseph F. Berry* was on the brief, for defendant in error in No. 120:

The power to regulate commerce among the several States is exclusive wherever the matter is national in its character or admits of one system or plan of regulation. *Cooley* v. *Board of Wardens*, 12 How. 319; *Welton* v. *Missouri*, 91 U. S. 280; *Kendall* v. *United States*, 12 Pet. 524, 618; *Valarnio* v. *Thompson*, 7 N. Y. 579.

There can be no question in this case that the act itself is national in its character and admits of only one system, which, to be effective, must be uniform in its application.

Where jurisdiction may be conferred on the United States courts, it may be made exclusive where not so by the Constitution itself, but, if exclusive jurisdiction be neither expressed nor implied, the state courts have concurrent jurisdiction whenever by their own constitution they are competent to take it. *Claflin* v. *Houseman*, 93 U. S. 130. See also *Hoxie* v. *N. Y., N. H. & H. R. R. Co.*, 82 Connecticut, 356; *Chicago &c. R. Co.* v. *Whitton*, 13 Wall. 288; *Plaquemines Fruit Co.* v. *Henderson*, 170 U. S. 521; *Teal* v. *Felton*, 12 How. 292; *Dallemagne* v. *Moisan*, 197 U. S. 174; *Robertson* v. *Baldwin*, 165 U. S. 278.

Congress cannot confer jurisdiction upon the state courts, *Martin* v. *Hunter*, 10 Wheat. 334; *Houston* v. *Moore*, 5 Wheat. 27; and state courts will not or cannot have jurisdiction of cases involving a penalty under United States laws. *Dudley* v. *Mayhew*, 3 N. Y. 9, 15; *Davidson* v. *Champlin*, 7 Connecticut, 224; *State* v. *Curtiss*, 35 Connecticut, 374; *United States* v. *Lathrop*, 17 Johnson (N. Y.)

4, 8; *Ex parte Knowles,* 5 California, 301; Kent's Commentaries,* 399; *Rushworth* v. *Judges,* 58 N. J. L. 97.

As Congress cannot vest any of the judicial power of the United States in the state courts, it is bound to create inferior courts in which to vest jurisdiction in cases arising under its acts. These courts have been created and cases arising under the act should be tried in courts ordained and established by the Congress, which are adapted better to enforce the act in a uniform manner than courts established by the State.

While conceding that Congress may have intended the state courts to assume jurisdiction, Congress cannot compel the state court to entertain it against its wish.

The reservation to the States respectively by the Tenth Amendment means the reservation of the right of sovereignty which they respectively possessed before the adoption of the Constitution and which they had not parted from by that instrument; and any legislation by Congress beyond the limits of the power delegated would be trespassing upon the rights of the States or the people and would not be the supreme law of the land but null and void. *United States* v. *Williams,* 194 U. S. 295; *Ex Parte Merryman,* 17 Fed. Cases, 9, 487; *Collector* v. *Day,* 11 Wall. 124; *Calder* v. *Bull,* 3 Dallas (U. S.), 388.

Art. V, § 1, of the Connecticut constitution prescribes how the judicial power of the State shall be vested and exercised, and it cannot be within the power of Congress to prescribe that a court of Connecticut must assume jurisdiction of a cause of action based upon an act the terms of which are entirely incompatible with its system of jurisprudence. Kent's Commentaries, 12th ed.* 403.

The power of the state courts to determine what cases they will accept jurisdiction of is absolute, for the power to maintain a judicial department is one incident to the inherent sovereignty of each State, in respect to which the State is as independent of the General Government as

that Government is independent of the States.  As to that power the two governments are on an equality. *Collector* v. *Day*, 11 Wall. 113, 126; *Stearns* v. *United States*, 2 Paine, 300; *Sherman* v. *Bingham*, Fed. Cases, No. 12,762; *Beavin's Petition*, 33 N. H. 89; *Stephens, Petitioner*, 4 Gray, 559; *In re Woodbury*, 98 Fed. Rep. 833.

The exercise of jurisdiction in this case in the state courts is entirely incompatible with the laws of the State and the act has been deemed to be both impolitic and unjust.

There are vital reasons why the state courts are not obliged to assume jurisdiction of this action and one of the principal reasons is that the act, to be enforced in the state courts, can be enforced only at the expense of disregarding many of the requirements of the law in Connecticut both in respect to pleadings and in respect to evidence.

Congress cannot provide rules of evidence which the state courts are bound to follow. *People* v. *Gates*, 43 N. Y. 40; *Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y. 282; *Moore* v. *Moore*, 47 N. Y. 467; *Bowlin* v. *Commonwealth*, 2 Bush (Ky.), 5; *S. C.*, 92 Am. Dec. 468; *Carpenter* v. *Snelling*, 97 Massachusetts, 452.

*Mr. J. C. McReynolds*, special assistant to the Attorney General, by leave of the court, filed a brief for the United States as *amicus curiæ* in No. 120.

The principles of law necessary for solving the questions in issue have been definitely determined by this court.

Congress has power to legislate concerning the mutual rights and liabilities of master and servant when both are actually engaged in interstate commerce. *Howard* v. *Illinois Central R. R. Co.*, 207 U. S. 463; *Adair* v. *United States*, 208 U. S. 161.

The Employers' Liability Act of 1906 was, in *El Paso & N. E. Ry. Co.* v. *Gutierrez*, 215 U. S. 87, 96, declared valid so far as it relates to commerce within the Territories

223 U. S.     Brief for the United States in No. 120.

where the inhibitions of the Fifth Amendment apply with full force. *Rassmussen* v. *United States*, 197 U. S. 516. Objections predicated upon the Fifth Amendment, which are now urged against the act of 1908, apply with equal force to the earlier act, and therefore must be considered as overruled.

In *Atlantic Coast Line R. R. Co.* v. *Riverside Mills*, 219 U. S. 186, this court upheld the Carmack amendment as a proper regulation of interstate commerce and not in violation of the Fifth Amendment; and see *Mobile &c. Railroad Co.* v. *Turnipseed*, 219 U. S. 35; *L. & N. Railroad* v. *Melton*, 218 U. S. 36; *Griffith* v. *Connecticut*, 218 U. S. 572; *German Alliance Ins. Co.* v. *Hale*, 219 U. S. 307, as to general classification of railway employés being a proper exercise of the police power.

The relationship—the reciprocal rights and liabilities—between a railroad carrier and its employés arises out of agreement; and when both parties are actually engaged in interstate commerce this agreement is an essential part thereof over which Congress has plenary power of regulation subject only to the restrictions of the Constitution. Beven on Employers' Liability, 3; Rueggs on Employers' Liability, 7th ed.; Mechem on Agency, § 1; Cooley on Torts, 531; *Farwell* v. *Boston & Worcester R. R. Co.*, 4 Met. 49, 56; *Priestley* v. *Fowler*, 3 Mees. & W. 1; *Murray* v. *So. Car. R. R. Co.*, 1 McMullan, 385; *Thomas* v. *Quartermaine*, 18 Q. B. D. 685; *Chicago, &c. Ry. Co.* v. *Ross*, 112 U. S. 377, 382; *Nor. Pac. R. R. Co.* v. *Herbert*, 116 U. S. 642, 647; *Nor. Pac. R. R. Co.* v. *Hambly*, 154 U. S. 349; Article by Prof. Mechem in The Illinois Law Review, November, 1909.

What constitutes interstate commerce and what is a regulation of it are practical questions to be decided in view of the rights involved in each case. *Dozier* v. *Alabama*, 218 U. S. 124. The operation of a railroad carrier in interstate commerce is impossible without servants—the human instrumentalities who must perform the neces-

sary acts. The lack of power to control agreements with such servants by prescribing their terms or otherwise would result in inability completely and effectually to regulate the course and current of commerce as ordinarily conducted through the instrumentality of railroads. Congress has plenary power to regulate whatever is interstate commerce, subject only to the restrictions of the Constitution. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366.

In the absence of action by Congress, the States may legislate concerning the relationship—the rights and liabilities—between master and servant operating in interstate commerce. But the general subject is within the control of Congress whenever it may choose to exercise its power. *Martin* v. *Pittsburg &c. R. R.*, 203 U. S. 284, 294; *Sherlock* v. *Alling*, 93 U. S. 99, 103, 107; *Old Dominion S. S. Co.* v. *Gilmore*, 207 U. S. 398; *West. Un. Tel. Co.* v. *Commercial Milling Co.*, 218 U. S. 406.

State statutes have been upheld only where Congress left the matter untouched and open to state regulation. When the public good requires such legislation it must come from Congress and not from the States. *Hall* v. *De Cuir*, 95 U. S. 485; *Chiles* v. *Chesapeake & Ohio Ry. Co.*, 218 U. S. 71; *Louisville, N. O. & T. Ry. Co.* v. *Mississippi*, 133 U. S. 587; *Plessy* v. *Ferguson*, 163 U. S. 537, 540; *N. J. S. Co.* v. *Brockett*, 121 U. S. 637; Hutchinson on Carriers (3d ed.), §§ 997, 1077.

A contract for the transportation of goods between different States by vessel or railroad is a part of interstate commerce whose terms may be prescribed or regulated by act of Congress; *The Delaware*, 161 U. S. 459, 471; and as to the Harter Act, passed in 1893, see *Martin* v. *The Southwark*, 191 U. S. 1; *Patton* v. *T. & P. Ry. Co.*, 179 U. S. 658, 663.

As to the Carmack amendment, see *Atlantic Coast Line R. R.* v. *Riverside Mills*, 219 U. S. 186.

The contract for service between a sailor and a vessel engaged in foreign commerce is part thereof and its terms may be directly prescribed by Congress. *Patterson* v. *The Eudora*, 190 U. S. 169, 176; *Robertson* v. *Baldwin*, 165 U. S. 275.

Congress may prescribe the character of instruments to be used in interstate commerce and declare the result of a failure so to do upon the agreement of employment between master and servant. *Johnson* v. *So. Pacific Co.*, 196 U. S. 1; *Schlemmer* v. *Buffalo, R. & P. Ry. Co.*, 205 U. S. 1; *St. Louis &c. Ry. Co.* v. *Taylor*, 210 U. S. 281, 294, 295.

*Mr. Charles W. Bunn* for plaintiff in error in No. 170:

Probably the interests of the railway company, plaintiff in error, would be promoted by having the act of Congress sustained, thus securing to it at least one uniform law of liability throughout the States in lieu of the differing laws of many States. But the fact cannot be ignored that for over a century it has been supposed that laws such as this fell within the exclusive power of the States, and that this view is held still by a large proportion of the bar and people. In fact, while defendant in error as administratrix is maintaining this action under this law, a sister of deceased, not a party to this action, asserts the liability of the railway company to her under the Montana statute.

The act of Congress rests wholly upon the power of Congress to regulate commerce among the States, which is the power to prescribe the rules by which commerce is to be governed. *Adair* v. *United States*, 208 U. S. 161, 177. See article by Mr. Hackett in Harvard Law Review for November, 1908. From the adoption of the Constitution until recently it has been understood universally that the exclusive power is in the States to say for what negligence a master shall be liable to a servant, what shall

be the effect of the servant's contributory negligence, what shall be the master's liability for the acts of fellow servants, whether any pecuniary liability shall arise out of death caused by negligence, what shall be the measure of damage in death and other negligence cases, and who shall receive the fruits of recovery.

While the power of Congress is supreme in its sphere, it does not extend beyond those subjects which pertain immediately and directly to commerce. The utmost ingenuity has failed to prove how commerce will directly be promoted or affected, or the movement of goods or passengers by rail directly influenced, by any rule governing the master's liability to his servant for defects in appliances, or for the acts of fellow servants, or establish the effect of the servant's own negligence, or determining when a liability arises for negligent death, or the extent of the damages, or the persons to whom the damages shall go.

The act is plainly distinguishable from safety appliance laws and from laws prescribing tests for qualification of trainmen. Such laws have an obvious and direct relation to commerce. They make transportation both of passengers and freight safer and more reliable.

Congress may have authority to regulate in some respects the relation of master and servant, but it has no such authority except to make rules really and substantially affecting commerce, and the rules laid down in the act in question do not so affect commerce.

Regulation of liability for injury to an employé merely because the master is engaged in interstate commerce, or because the employé is so engaged, is inadmissible, the particular regulation not being a rule of commerce or having any relation to commerce; or at most such a shadowy and indirect relation as not to be a regulation of commerce within the power of Congress. *County of Mobile* v. *Kimball*, 102 U. S. 691; *Gloucester Ferry Co.* v.

*Pennsylvania*, 114 U. S. 196; *In re Rahrer*, 140 U. S. 545; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *United States* v. *Knight Co.*, 156 U. S. 1; *Hooper* v. *California*, 155 U. S. 648.

The act of Congress probably conflicts with the law of every State, with some in one particular, with others in another. It would be impossible to enumerate such conflicts; but some of them are: in respect of the liability for the acts of fellow servants; in creating an action for death practically with unlimited damages; in distribution of proceeds in cases of recovery for death; in respect of the effect of contributory negligence and assumption of risk; in providing that no contract may be made between the parties contrary to the terms of the act; and in giving two years to bring action and in not requiring, as the laws of some States do, any preliminary notice to the defendant.

Congress has assumed to enter the field of the administration of deceased persons. In some States damages for death are not subject to the claims of creditors; in others it is believed that they are; but if this act is valid it seems to remove that question from state control. Some States give the damages to the heirs, some to the next of kin, and some to the widow. The rules in the States vary widely in determining who is an heir or next of kin entitled to share in the recovery.

In this particular case the law of Montana would give the damages half to the widow and half to the sister; but the act of Congress assumes to overrule these state statutes, in the case at bar giving the whole damage to the widow to the exclusion of the sister, instead of dividing it between them.

Conflicts between the act of Congress and laws of the States result in annulling the acts of the States, providing that of Congress is valid, because if this is a regulation of commerce it is so well settled as now to be elementary, that Congress once having acted, state power over the

whole subject (if indeed the States ever had any power) is ended; and any legislation by a State creating a liability of railway companies to their employés engaged in interstate commerce would be an unlawful interference with and burden upon such commerce. On this clear principle the plaintiff in error will not be liable to the sister of deceased, or to an administrator appointed for her benefit under the laws of Montana, provided this judgment is affirmed.

Plaintiff in error agrees with the Attorney General that railway companies have no employés who are not engaged in interstate commerce, unless indeed they carry on mining or some business apart from transportation. The whole line of a railroad extending through several States constitutes a single property and of necessity must be operated as such.

If the act in question is valid all employés of railways, at least all employed in or about the transportation carried on by railways, are taken out of the jurisdiction of the States of which they are citizens, to the extent of all the matters regulated by the act. The same will follow, if Congress chooses to act as to employés of manufacturers and merchants engaged in interstate commerce.

Mr. Samuel A. Anderson for defendant in error in No. 170:

Congress has power, under the commerce clause, to regulate the relation of master and servant as between an interstate carrier and an interstate servant. *Employers' Liability Cases*, 207 U. S. 463; *Adair* v. *United States*, 208 U. S. 161; *Gibbons* v. *Ogden*, 9 Wheat. 1, 196; *El Paso & Northeastern Ry. Co.* v. *Gutierrez*, 215 U. S. 87; *Peirce* v. *Van Dusen*, 78 Fed. Rep. 693; *The Daniel Ball*, 10 Wall. 557; *Gilman* v. *Philadelphia*, 3 Wall. 713, 724, 725; *United States* v. *Combs*, 12 Pet. 72, 78; *Cooley* v. *Board of Wardens &c.*, 12 How. 299; *Patterson* v. *Bark Eudora*, 190 U. S. 169.

Congress has the power to regulate the relation of master and servant as between an interstate carrier and an intrastate employé. See *Missouri Pacific Ry. Co.* v. *Mackey,* 127 U. S. 205; *Minn. & St. Louis Ry. Co.* v. *Herrick,* 127 U. S. 210; *Chicago, Kansas & Western R. R. Co.* v. *Pontius,* 157 U. S. 209; *Tullis* v. *Lake Erie &c. R. R. Co.,* 175 U. S. 348; *Baltimore & Ohio R. R. Co.* v. *Baugh,* 149 U. S. 368; *Minnesota Iron Company* v. *Kline,* 199 U. S. 593.

The power of Congress to regulate commerce between the States is as great as to regulate commerce with foreign nations, the power in both instances originating solely from the commerce clause. See *Brown* v. *Houston,* 114 U. S. 622; *Bowman* v. *Chicago &c. Ry. Co.,* 125 U. S. 465; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Pittsburg & Southern Coal Co.* v. *Bates,* 156 U. S. 577.

The fact that the act declares that such common carriers shall be liable for injuries to interstate servants caused through the negligence of any employé does not tend to impair its validity. *Watson* v. *St. Louis, I. M. & S. Ry. Co.,* 169 Fed. Rep. 942, 950.

Under the decisions on the Safety Appliance Acts, if any car in a train is being used in interstate commerce, all cars in that train must be equipped according to the provisions of the acts, whether such cars are being used or were ever used in carrying interstate merchandise. See *Johnson* v. *Southern Pacific Ry. Co.,* 196 U. S. 1; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 205 U. S. 1; *Wabash Railway Company* v. *United States,* and *Elgin J. & E. Ry. Co.* v. *United States,* 168 Fed. Rep. 1.

Congress has power to impose liability upon an interstate carrier by railroad in favor of an interstate servant injured through the negligence of other employés working at and about and in connection with such interstate railroad, irrespective of the employment of the servant chargeable with careless acts resulting in such injury. *Gilman* v. *Philadelphia,* 3 Wall. 713; *In re Debs,* 158 U. S. 564.

 

· The act in question is not invalid because confined to common carriers by railroad engaged in interstate commerce, nor because it embraces all interstate employés on interstate roads, when injured while engaged in such service, without regard to the character of such service. *Patterson* v. *Bark Eudora,* 190 U. S. 169; *Kiley* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 138 Wisconsin, 215.

Sections 3 and 4 of the act, the first establishing the doctrine of comparative negligence, the second abrogating the doctrine of assumption or risk in certain cases, are valid enactments. *Johnson* v. *Southern Pacific Ry. Co.,* 196 U. S. 1; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 205 U. S. 1.

· It was the aim of Congress to do exact justice. As to wisdom of such a rule as applied to marine torts, see *The Max Morris,* 137 U. S. 1; *The Mystic,* 44 Fed. Rep. 399. Whether or not these provisions are equitable or unjust · is a matter concerning Congress and not the courts. *St. Louis & Iron Mountain Ry. Co.* v. *Taylor,* 210 U. S. 281, 295.

Section 5, limiting the right of contract and providing that no rule, etc., shall be permitted to exempt such common carriers from any liability created by said act, is a valid enactment. *Kiley* v. *Chicago, M. & St. P. Ry. Co.,* 138 Wisconsin, 215.

Sections 3, 4 and 5 are clearly separable from the main · body of the statute and, even if one or all should be held invalid, nevertheless, the main statute could and should. be sustained, notwithstanding such invalidity.

· The statute is in keeping with modern thought and is a wise and humane enactment. Many States have legislated along similar lines and probably in no State does the common law still exist in its full force and effect. All men, including all persons engaged in the business of transportation, now concede that the general object sought by the enactment of the statute is one that should meet with universal approval.

*The Attorney General,* by leave of the court, filed a brief for the United States, as *amicus curiæ,* in No. 170: [1]

So far as it relates to the liability of an interstate employer to an interstate employé for injury received through the negligence of another interstate employé, the act is a regulation of interstate commerce, and within the constitutional power of Congress.

In the *Employers' Liability Cases,* 207 U. S. 463, the enactment there considered was held unconstitutional, for the reason that it imposed a liability to an intrastate employé as well as to an interstate employé; while what was then said in the opinion of the court concerning the authority of Congress to regulate the liability to an interstate employé was not logically vital to the decision, nevertheless the utterance was made after full discussion of the very question at the bar, after solemn consideration of the question by the court, and in a deliberate purpose of preventing misconception by Congress of the actual and limited scope of the exact decision, with the result that Congress should not mistakenly believe itself incapable of enacting a new statute affecting interstate employés alone.

Whether the court's declaration was, in a technical view, dictum or decision, the declaration certainly was not casual or unconsidered, but was solemnly made after argument, upon consideration, and with serious, just and beneficent purpose, and see dissenting opinions of Justices Harlan, McKenna, Holmes and Moody.

In the later case of *Adair* v. *United States,* 208 U. S. 161, this court treated the power of Congress as settled.

[1] The brief contained the following statement:

The foregoing brief was prepared by the late Solicitor General (Lloyd W. Bowers who died in September, 1910) with his accustomed care and ability. In order that it may properly be before the court, I adopt it and ask its consideration. Geo. W. Wickersham, Attorney General. December, 1910.

Congress passed the act of 1908 in the purpose of exercising a power which this court, in *The Employers' Liability Cases* and in the *Adair Case*, solemnly accorded to Congress; and the lower Federal courts have regarded those cases as settling the matter. *Watson* v. *St. Louis, I. M. & S. Ry. Co.*, 169 Fed. Rep. 942; *Zikos* v. *Oregon R. R. & Nav. Co.*, 179 Fed. Rep. 893.

Whatever may be the power of Congress to legislate about or for agents of interstate commerce, when such legislation can have no substantial influence upon the act which is interstate commerce, there can be no doubt of the congressional authority to legislate concerning the agents of interstate commerce in ways that do substantially influence the act of interstate commerce about which such agents are engaged, or affect the reliability, security, promptness or economy of the Interstate Commerce Act. Interstate commerce—if not always at any rate when the commerce is transportation—is an act.

If Congress regards the rule of employer's responsibility established by this new statute as more conducive than the old rule to the security of the men performing the act of interstate commerce, whether it is right in its conclusion is unimportant, for, if that view can be fairly entertained, it is not for the courts to substitute their opinion concerning the better policy. *Employers' Liability Cases, supra; St. Louis & I. M. Ry. Co.* v. *Taylor*, 210 U. S. 281.

Testing the rule therefore by the theory on which it may and does rest, it is an enactment to promote not only the actual, but also the prompter, cheaper, safer and more efficient, performance of the act of interstate commerce itself. Illustrations of the power of Congress to regulate the act of interstate commerce by legislation concerning the agents who do it or the instruments with which it is done exist both in the Federal statutes and in the decisions of this court.

Congress may create an agent for doing interstate

commerce, *Pacific Railroad Removal Cases*, 115 U. S. 1; *California* v. *Pacific Railroad*, 127 U. S. 1; may authorize the erection of bridges as instrumentalities of interstate commerce, *The Clinton Bridge*, 10 Wall. 454; *Luxton* v. *North River Bridge Co.*, 153 U. S. 525; may prescribe the character or qualifications of the agents of interstate commerce—so as to pilots. See *Spraigue* v. *Thompson*, 118 U. S. 90, 95.

Such power as the States possess to license and to require the use of pilots exists only because Congress leaves them that power until action by itself. *Cooley* v. *Philadelphia Wardens*, 12 How. 299; *Huus* v. *N. Y. & Porto Rico S. S. Co.*, 182 U. S. 392; *Olsen* v. *Smith*, 195 U. S. 332, 344.

Congress may prescribe the kind and condition of the material instruments with which commerce shall be done. See Safety Appliance Acts, March 2, 1893, 27 Stat. 531; of April 1, 1896, 29 Stat. 85; March 2, 1903, 32 Stat. 943; and numerous acts concerning such things as steam boilers, life preservers, lifeboats and fire apparatus on vessels.

The validity of the Safety Appliance Acts seems never to have been questioned either by the bar or by this court. *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1; *Schlemmer* v. *B., R. & P. Ry. Co.*, 205 U. S. 1; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 210 U. S. 281.

The system of licensing steam vessels engaged in interstate commerce was upheld in *The Daniel Ball*, 10 Wall. 557.

The supply and distribution of cars as instruments of interstate commerce may be regulated under the authority of Congress. *Int. Com. Comm.* v. *Ill. Cent. R. R. Co.*, 215 U. S. 452, 474–474. For other instances see Hours of Service Act, March 4, 1907, 34 Stat. 1415; Explosive Act of July 3, 1866, 14 Stat. 81; Rev. Stat. §§ 5353–5355, Commodities Clause; *United States* v. *Del. & Hudson Co.*, 213 U. S. 366.

Congress may legislate in reasonable ways to preserve the existence and conserve the efficiency of interstate employés against other persons who are in the same interstate business. The Federal power is to protect and advance the act of interstate commerce, and so to protect and further the work of any particular agent of interstate commerce, against all the world. *In re Debs*, 158 U. S. 564. Even a State of the Union cannot sanction an interruption. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518; *Union Bridge Co.* v. *United States*, 204 U. S. 364.

Congress would probably be within its power if it were legislating solely for the benefit of the interstate employé who is injured in interstate work, and without reference to the effect of its legislation upon the security and efficiency of the interstate act itself.

In *Patterson* v. *Bark Eudora*, 190 U. S. 169, the commerce clause was held to empower Congress to forbid the advance payments of wages to seamen engaged in interstate or foreign commerce. This rule was enacted for the sole benefit of the seamen as the agents of commerce. The case did not rest upon the admiralty powers of the United States.

Congress may so legislate as to preserve the utility or the beneficence of commerce to those for whom it is done or to the public at large, and may prevent the conduct of pernicious commerce. *Lottery Case*, 188 U. S. 321; *United States* v. *Del. & Hudson Co.*, 213 U. S. 366.

The statute is a regulation of interstate commerce although it creates a liability of the interstate employer to his interstate employé for injury of the latter through the negligence of an intrastate employé. *Schlemmer* v. *Buffalo, Rochester &c. Ry.*, 205 U. S. 1, 11.

Abolition of the fellow-servant rule is only an extinction in the particular case of the doctrine of assumed risk.

The constitutional function of Congress is to save and

promote interstate commerce; and it may save and promote it through suppression of any kind of injurious influence.  *In re Debs*, 158 U. S. 564; *Loewe* v. *Lawlor*, 208 U. S. 274.

Congress has forbidden local bridges which interfere with interstate navigation; local carriage of explosives on interstate trains; state or municipal interference with the business of interstate soliciting agents, and state and municipal taxation of interstate business.  An act for punishment of outsiders for stealing goods of a wrecked vessel was upheld, under the commerce clause, in *United States* v. *Coombs*, 12 Pet. 72, 77.

An interstate employer can be required to be careful about the apparatus that he uses, for the protection of his employé who is engaged in interstate work, without reference to the interstate or intrastate character of the use to which the apparatus is being put at the particular time.

If constitutional difficulty be found about extending the interstate employer's responsibility to an interstate employé for negligence of an intrastate employé, the statute then should be construed as limited to the case of an interstate employé's negligence.

The proper construction of the statute, unless that construction will destroy it, includes the case of an intrastate employé's negligence.

The congressional selection of a civil liability of the interstate employer as the best sanction for his new duty of preventing injury of an interstate employé through negligence of his co-employés is clearly allowable; and, as Congress had authority to adopt that sanction, it necessarily prescribed to whom the new civil right should belong.  See Taft, Cir. J., in *Narramore* v. *Cleveland, C., C. & St. L. Ry. Co.*, 96 Fed., Rep. 298, 300.

A new civil duty necessarily involves a new civil right. It was allowable, because unavoidable, for Congress to say who should have the right of civil recovery.  Other-

wise, even if it would be competent for the States to desig-
nate the possessor or beneficiary of the right, the state
legislatures might make no such designation. In any
event, the effectiveness of the new congressional rule of
duty would be left to the choice of the States.

The statutory provisions that the injured man may sue
and that, if he dies, his personal representative may sue
for the benefit of designated relatives, are requisite to the
existence of any effective right, and therefore of any effect-
ive duty.

The designation of the beneficiaries of the new right,
in case the injured employé dies, does not interfere with
the ordinary control of the States over *post mortem* suc-
cession. State laws of descent have nothing to do with the
question who may continue settlement and finally take
title under the homestead law of the United States, after
death of the original entryman. *Bernier* v. *Bernier,* 147
U. S. 242; *McCune* v. *Essig,* 199 U. S. 382.

Congress can enact that the responsibility of an inter-
state employer to an interstate employé for negligence of
co-employés or negligence about appliances shall not be
entirely displaced by contributing negligence of the inter-
state employé.

Nobody has a vested right in the continuance of the
rules of the common law. Rights already created under
those rules and property already derived from them have
sanctity; but the common law may be changed as to future
transactions, just as statutes may be. *Munn* v. *Illinois,*
94 U. S. 113, 134.

How the interstate employé's negligence shall be allowed
to affect the interstate employer's liability for his own
negligence or for negligence with which he is chargeable
is purely one of policy, within the legislative discretion,
and the common-law view may rationally be rejected.
The alternative conclusion which Congress has reached
is to be found in the long-established rules of certain

jurisdictions not holding to the common law and in the recent trend of English and American legislation. See, for instance the admiralty practice, which divides the loss between persons concurrently negligent. *The Sapphire*, 18 Wall. 51, 56; *The Max Morris*, 137 U. S. 1. And contribution lies between joint tort feasors in admiralty. *Erie R. R. Co.* v. *Erie Transp. Co.*, 204 U. S. 220, 225, 227.

The rule of comparative negligence, variant in its details but always contradictory of the common-law rule, was established by the courts in Illinois, Kansas and Tennessee. *Galena* v. *Jacobs*, 20 Illinois, 478, 496; *Chicago* v. *Stearns*, 105 Illinois, 554; *Union Pacific R. R. Co.* v. *Rollins*, 5 Kansas, 167, 180; *Kansas &c. R. R. Co.* v. *Peavey*, 29 Kansas, 169, 180; *Nashville &c. R. R. Co.* v. *Smith*, 6 Heisk. 174; *Nashville &c. R. R. Co.* v. *Carroll*, 6 Heisk. 347, 366.

For statutory instances, see Georgia Code, § 2972; Florida Laws of 1887, c. 3744, § 1; Mississippi Code of 1892, § 3548; English Employers' Liability Acts, Aug. 6, 1897; 60 and 61 Vict., c. 37, § 1; Act of July 30, 1900, 63 and 64 Vict., c. 22; *McNicholas* v. *Dawson*, 68 L. J. (Q. B.) 470.

It seems never to have been held anywhere that the Federal or any state constitution requires that contributory negligence be either total or a partial defense.

As to statutes adopting the rule of comparative negligence and abolishing contributory negligence, see *Nor. Pac. Ry. Co.* v. *Castle*, 172 Fed. Rep. 841, 843; *Alabama G. S. Ry. Co.* v. *Coggings*, 88 Fed. Rep. 455; *Christian* v. *Macon Ry. & Light Co.*, 120 Georgia, 314; *Railroad Co.* v. *Foxworth*, 41 Florida, 1, 63; *Phila., B. & W. R. R. Co.* v. *Tucker*, 35 App. D. C. 123, 38 Washington Law Reporter, 230; *Pulliam* v. *Illinois Central R. R. Co.*, 75 Mississippi, 627; *Schlemmer* v. *Buffalo &c. Ry. Co.*, 205 U. S. 1.

Congress likewise can modify, as it did in § 4, as to interstate employés the assumption of risk rule in cases where the common carrier has violated any statute en-

acted for the safety of employés and so contributed to the injury or death of such employé.

Recent statutory abrogation of the doctrine of assumption of risk will be found in North Carolina Act of February 23, 1897, Private Laws of 1897, c. 56; Massachusetts Laws of 1895, c. 362, § 7; New York act of April 15, 1902, Laws of 1902, Vol. 2, c. 600, § 3, pp. 1748–50; English Employers' Liability Act of 1880, as interpreted in *Thomas* v. *Quartermaine*, 18 Q. B. D. 685, and *Smith* v. *Baker*, App. Cas. 1891, 325; English Employers' Liability Act of July 30, 1900, 63 and 64 Vict., c. 22; Federal Safety Appliance Act of March 2, 1893, as amended April 1, 1896, § 8 (27 Stat. 531, and 29 Stat. 85).

For judicial authorities upholding general statutory changes of that nature, see *Coley* v. *Railroad Co.*, 128 Nor. Car. 534; *S. C.*, 129 Nor. Car. 407; *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205; *Miss. & St. Louis Ry. Co.* v. *Herrick*, 127 U. S. 210; *Chicago K. & Western R. R. Co.* v. *Pontius*, 157 U. S. 209; *Tullis* v. *Lake Erie & West. R. R. Co.*, 175 U. S. 348; *Minnesota Iron Co.* v. *Kline*, 199 U. S. 593; *Narramore* v. *Cleveland &c. R. R. Co.*, 96 Fed. Rep. 298, 302; *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vermont, 288; *Schlemmer* v. *Buff., Roch. & Pitts. Ry. Co.*, 205 U. S. 1, 11–14; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1.

Sections 3 and 4, concerning contributory negligence and assumption of risk, are each clearly separable from the rest of the statute; and even if they are unconstitutional that would not affect the operation of the rest of the act. *El Paso &c. Ry. Co.* v. *Gutierrez*, 215 U. S. 87.

Congress did not attempt, either in the act of 1908 or that of April 5, 1910, to confer a new jurisdiction upon state courts over actions in enforcement of the new Federal right; and, even if the act of April 5, 1910, should be construed as embracing such an attempt, its invalidity in that respect would not affect the substantive rules of law established by the act of 1908. Nor can Congress be

considered to have made the operation of the substantive rules of law established by the act of 1908 dependent upon the willingness of all or any state courts to take cognizance of actions founded upon those rules. *Hoxie v. N. Y., N. H. & H. R. R. Co.*, 73 Atl. Rep. 754, 762, is clearly wrong.

The act of 1908 did not try to give a new jurisdiction of its own creation to the state courts. The act deals entirely with rights and duties—not with remedies. It creates rules of substantive law.

The state courts, inasmuch as Congress did not give exclusive jurisdiction to the Federal courts, could and should use their general jurisdiction, given to them by their state legislatures, in enforcement of the Federal right. The privilege of the state courts so to use their jurisdiction is undeniable, when neither Congress nor the state legislature has withdrawn that privilege in a particular case. The general grant of jurisdiction by state law is sufficient to cover any right, whether created by the law of that State or of other States or of the United States or of foreign countries. Congress has left the state courts free to use that general jurisdiction, by not prohibiting its use; and the terms of the State's grant of jurisdiction cover the case. *Claflin v. Houseman*, 93 U. S. 130.

It is the duty, as well as the right, of the state courts to take jurisdiction of actions under the Federal Employers' Liability Act. Report of the Senate Committee on the Judiciary, March 22, 1910, 61st Congress, 2d Session.

The statute makes no reference to remedies, and establishes the law independently of remedies. The clause of 1910 about concurrent jurisdiction of the state courts was obviously intended to prevent a mistaken and important reduction of remedies—not to make new conditions upon the operation of the original statute.

Further, the attitude of the state courts can make no real difference in the operation of the statute. In the

first place, any claimant of the new Federal right can go into. a Federal court by simply laying his damages at more than $2,000. In the second place, as already suggested, this court can doubtless compel the state courts to exercise in aid of the new Federal right such jurisdiction as those courts have under state laws.

"The act does not deprive a railroad of its property without due process of law, in violation of the Fifth Amendment.

Assuming that the due process requirement of the Fifth Amendment is equivalent to the equal protection of the laws required by the Fourteenth Amendment, the authorities show that this court has already repeatedly disposed of these objections to the act.

The following cases sustain state statutes abolishing the fellow-servant rule upon railroads alone, against express attack under the Fourteenth Amendment: *Missouri Pacific Ry. Co.* v. *Mackey*, 127 U. S. 205; *Minn. & St. Louis R. R. Co.* v. *Herrick*, 127 U. S. 210; *Chicago &c. R. R. Co.* v. *Pontius*, 157 U. S. 209; *Tullis* v. *Lake Erie & Northern R. R. Co.*, 175 U. S. 348; *St. Louis Bridge R. R. Co.* v. *Callahan*, 194 U. S. 628; *Minnesota Iron Co.* v. *Kline*, 199 U. S. 593; *P. C. C. & St. L. R. R. Co.* v. *Lightheiser*, 212 U. S. 560; *Louisville & Nashville R. R. Co.* v. *Melton*, 218 U. S. 36.

Pertinent support of other legislation making special rules for railroads is found in *Martin* v. *Pittsburg & Lake Erie R. R. Co.*, 203 U. S. 284; *St. Louis, I. M. & S. Ry. Co.* v. *Paul*, 173 U. S. 404; *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 417.

Extension of the new rules to interstate employés generally was permissible. Their restriction to employés injured in consequence of special railroad hazard was not required by the Constitution.

Of the cases above cited, concerning statutes abolishing the fellow-servant rule upon railroads, the following

related to injuries which did not result from any peculiar hazard: *Chicago &c. R. R. Co.* v. *Pontius*, 157 U. S. 209; *St. Louis &c. Terminal R. R. Co.* v. *Callahan*, 194 U. S. 628 (see the full facts in *S. C.*, 170 Missouri, 473); *Minnesota Iron Co.* v. *Kline*, 199 U. S. 593; *Louisville & Nashville R. R. Co.* v. *Melton*, 218 U. S. 36.

*El Paso & Northeastern Ry. Co.* v. *Gutierrez*, 215 U. S. 87, while not explicitly treating it, really covers the exact point as presented under this legislation.

The cases at bar involve no question under § 5 concerning the validity of a contract exempting the carrier from responsibility under the rules of the statute. That section is manifestly separable from the rest of the act. Strong principle and much authority support its validity; but its palpable separableness makes discussion of the section now unnecessary. *McNamara* v. *Washington Terminal Co.*, 38 Wash. Law Rep. 343, in which § 5 of the present act was construed and upheld. The separableness of § 5 is too plain for discussion.

*Mr. John L. Hall* for plaintiff in error in No. 289 and defendant in error in No. 290:

The act is not in itself a regulation of commerce. *Gibbons* v. *Ogden*, 9 Wheat. 196.

The Constitution which enumerates the powers of the National Government is in itself a limitation upon the power of Congress to legislate. *United States* v. *Knight*, 156 U. S. 1, 11.

The Constitution guarantees the existence of the powers of the state governments no less than it guarantees the powers of the Federal Government. Cooley on Const. Lim. 592; *Ward* v. *Maryland*, 12 Wall. 418. This act is not one which plainly, logically, and directly tends to promote commerce between the States. *Hopkins* v. *United States*, 171 U. S. 592.

In cases in which this court has described the power

of the States to legislate upon interstate commerce, the legislation which has been under consideration has always directly and logically affected the intercourse between the States, see *Hall* v. *DeCuir*, 95 U. S. 485; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Brown* v. *Maryland*, 4 Wash. C. C. 378; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Crandall* v. *Nevada*, 6 Wall. 35; *Wabash R. R.* v. *Illinois*, 118 U. S. 557; *Nashville &c. R. R.* v. *Alabama*, 128 U. S. 96; *Osborne* v. *Florida*, 164 U. S. 650; *Pullman Co.* v. *Adams*, 189 U. S. 420; *Gladson* v. *Minnesota*, 166 U. S. 427; *Illinois Central R. R.* v. *Illinois*, 163 U. S. 142.

The cases of *Coe* v. *Errol*, 116 U. S. 517; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *N. Y., N. H. & H. R. R.* v. *New York*, 165 U. S. 628; *Louisville &c. Ry. Co.* v. *Mississippi*, 133 U. S. 587; *Hennington* v. *Georgia*, 163 U. S. 299; *Telegraph Co.* v. *James*, 162 U. S. 650; *Nashville &c. Ry.* v. *Alabama*, 128 U. S. 96, involve the consideration of statutes which bear directly and naturally upon the commerce itself.

Any regulation to come within the meaning of the interstate commerce clause must be direct and logical and not indirect, remote and merely incidental. *Addyston P. & S. Co.* v. *United States*, 175 U. S. 211; *Hooper* v. *California*, 155 U. S. 648; *Munn* v. *Illinois*, 94 U. S. 113; *L. & N. Ry.* v. *Kentucky*, 161 U. S. 677; *Lake Shore Ry.* v. *Smith*, 173 U. S. 684.

The act does not declare that it regulates interstate commerce. It prescribes no rule by which commerce is to be governed; it determines no conditions upon which it shall be conducted. It does not seek to secure equality and freedom against discrimination. It does not determine when it shall be free or when it shall be subject to any duties or other burdens. See Minority Report on the redraft of this bill known as H. R. No. 2310 of the 60th Congress, 1st Session; and Report No. 1386, H. R., 60th Congress, 1st Session.

Cases arising under maritime law in which acts of Congress upon the relations of owners of ships to the owners of goods, upon the relations with passengers and employés, have been sustained, rest not on the commerce clause but on the admiralty jurisdiction. *Craig* v. *Insurance Company*, 141 U. S. 638; *Butler* v. *Boston S. S. Co.*, 130 U. S. 548; and see *B. & O. R. R.* v. *Maryland*, 21 Wall. 456; *In re Garnett et al.*, 141 U. S. 1; *The Daniel Ball*, 10 Wall. 557; *The Roanoke*, 189 U. S. 185; *The Lottawanna*, 21 Wall. 558.

Acts which are held constitutional when applied to maritime regulation are not necessarily constitutional when applied to commerce by land.

The Safety Appliance Acts are justified because it was essential that States should not legislate as to the instrumentalities which should be used by railroads. Such legislation by States would interfere with interstate commerce and place a burden upon free and rapid transportation. The legislation was national in its character and required uniformity of regulation. *United States* v. *Southern Ry. Co.*, 164 Fed. Rep. 351.

This act invades the sovereignty of the States. *Trade-Mark Cases*, 100 U. S. 96; *Barbier* v. *Connolly*, 113 U. S. 27; *Hooper* v. *California*, 155 U. S. 648.

If Congress has the power to determine the liability of a railroad company to its employés simply because both are engaged in interstate commerce, then it has the same right to regulate the liability of a shipper to its employé when engaged in interstate commerce. In fact, there is scarcely any relation upon which it cannot legislate. The States would be shorn of their power to regulate their domestic affairs. *Houston* v. *Moore*, 5 Wheat. 1, 48; *Keller* v. *United States*, 213 U. S. 138; *Leisy* v. *Hardin*, 135 U. S. 100; *Pa. R. R.* v. *Knight*, 192 U. S. 21; *Chicago &c. R. R.* v. *Solan*, 169 U. S. 133; *United States* v. *E. C. Knight Co.*, 156 U. S. 1; *Northern Securities Co.* v. *United States*,

193 U. S. 197; *L. & N. R. R.* v. *Kentucky*, 161 U. S. 677.

The act regulates the relation of master and servant as to things which are not exclusively interstate commerce.

It substantially reënacts in this particular the words of the previous Employers' Liability Act, and must be presumed to have been drafted with knowledge of the judicial construction which those words had received. *Employers' Liability Cases*, 207 U. S. 463.

An interstate carrier is also an intrastate carrier and employés upon the same train may be engaged at the same time in interstate and intrastate commerce; the statute therefore confers a right of recovery upon employés engaged in intrastate commerce, and thus touches the relation of master and servant as to matters concerned with intrastate commerce.

The right of the State to regulate its commerce within its own borders is paramount to the power of Congress to regulate such commerce. *The License Cases*, 5 How. 504.

The act touches directly and seeks to regulate the relation of master and servant as to intrastate business. *Hoxie* v. *N. Y., N. H. & H. R. R. Co.*, 82 Connecticut, 352, 368.

When Congress seeks to impose some new rule of liability upon employers engaged in interstate commerce, it is imposing a rule of liability to the same extent in effect upon those who are engaged in intrastate commerce. It denies the authority of the State to regulate its domestic commerce, which is in no respect inferior to the power of Congress to regulate interstate commerce. *Zikos* v. *Oregon R. & N. Co.*, 179 Fed. Rep. 893.

The act is unconstitutional in that it violates the Fifth Amendment to the Constitution, which is a limitation upon the power of Congress, while the Fourteenth is a limitation upon the power of the States. The purpose of both amendments is to secure the existence of fundamental

justice and to prevent capricious and arbitrary legislation whereby unfair burdens are placed upon one class of persons.

The construction placed upon one Amendment is applicable to the other. *San Mateo County* v. *So. Pac. Ry.*, 13 Fed. Rep. 151; *Dent* v. *West Virginia*, 129 U. S. 114; *Sinking Fund Cases*, 99 U. S. 718; *French* v. *Barber Asphalt Co.*, 181 U. S. 324; *Munn* v. *Illinois*, 94 U. S. 123; *Giozza* v. *Tiernan*, 148 U. S. 657; *Hurtado* v. *California*, 110 U. S. 516; *Gulf, Colorado &c. R. R.* v. *Ellis*, 165 U. S. 150.

The act violates the Fifth Amendment because: It imposes upon common carriers by rail engaged in interstate commerce liabilities which are not imposed upon others engaged in interstate commerce; it deprives common carriers by rail engaged in interstate commerce of defenses which are available to others engaged in interstate commerce; it limits the powers of contract of common carriers by rail engaged in interstate commerce in their relations with their employés, and does not limit such powers of others engaged in interstate commerce.

Congress sought no reasonable or proper basis for the classification, although its attention was directed to the necessity for such a distinction. See Cong. Rec. 1908, 4433. Congress is not seeking to regulate interstate commerce by regulating the hazardous business of operating a railroad, but is attempting to regulate carriers by rail in all of their departments, and liability is imposed in favor of all employés while engaged in interstate commerce.

The Fifth Amendment insures equal protection of the laws. It prevents distinctions and classifications, unless the classifications are made upon some basis which is natural and not arbitrary. *Gulf, Colorado &c. R. R.* v. *Ellis*, 165 U. S. 150; *Missouri Pacific Ry.* v. *Mackey*, 127 U. S. 205; *Minneapolis &c. Ry.* v. *Herrick*, 127 U. S. 210; *Chicago &c. R. R.* v. *Pontius*, 157 U. S. 209.

As a basis for classification by special legislation of Congress, this court has no right to assume that the majority of the members of the class who are favored by this legislation are exposing their lives to extraordinary risks when the facts are to the contrary. This court will determine for itself the propriety of the classification. *Lochner* v. *New York*, 198 U. S. 45.

It is for this court to assume that those actually engaged in the movement and operation of trains form a greater part or even one-half of the total number of employés engaged in the business of interstate commerce of any carrier by rail so engaged.

A classification is not justified by general considerations when the reason for the classification applies to less than one-fifth of the class selected. Accident Insurance Manual, 365–371; 21st Report Interstate Com. Comm. 153; and see *Louisville & Nashville Ry.* v. *Melton*, 218 U. S. 36; *Tullis* v. *Lake Erie & W. R. R.*, 175 U. S. 348; *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 294; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557; *Minnesota Iron Co.* v. *Kline*, 199 U. S. 593; *Martin* v. *Pittsburg &c. R. R.*, 203 U. S. 284; *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114; *Johnson* v. *Ry. Co.*, 43 Minnesota, 222, as to classifications, holding that one rule of liability cannot be established for railway companies merely as such and another rule for other employers under like circumstances, and that special legislation to be not class legislation must not only treat alike under the same conditions all who are brought within its influence, but in its classification it must bring within its influence all who are under the same conditions.

The act has not included within its provisions the interstate employés of all other persons engaged in interstate commerce.

It includes within its terms only one class of employers who are engaged in interstate commerce; namely, railroads. It discriminates against railroad companies en-

gaged in interstate commerce who operate and maintain boats, wharves, docks and incidental equipment, and other employers engaged in interstate commerce operating and maintaining boats, wharves, and incidental equipment under precisely the same conditions.

The provisions of § 5 violate the Fifth Amendment in that they interfere with freedom of contract.    *Adair.* v. *United States, supra.*

The right to contract is as well recognized as the right to property. *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Railroad Co.* v. *Richmond,* 19 Wall. 584; *Hoxie* v. *N. Y., N. H. & H. R. R. Co.,* 82 Connecticut, 352, 369.

If the act is constitutional, plaintiff in this case cannot recover as the employé must be engaged in interstate commerce at the time of his injury in order to maintain his action under the statute, and the burden is necessarily upon the plaintiff to show that at the time of the injury he was not engaged in intrastate commerce.

The work performed by some employés may be properly described as dangerous, while the work performed by other employés is subject to no more risks than the ordinary occupations of life.    There are employés engaged in the direct movement and operation of trains; employés engaged in the repair and maintenance of tracks; those engaged in the construction and repair of locomotives and cars; those whose duties are purely commercial and clerical. See on this point *Foley* v. *Railroad,* 64 Iowa, 644; *Stroble* v. *Railroad,* 70 Iowa, 555; *Malone* v. *Railroad,* 65 Iowa, 417; *Johnson* v. *Railroad,* 43 Minnesota, 222; *Jemming* v. *Railroad,* 96 Minnesota, 302; *Missouri, K. & T. R. R.* v. *Medaris,* 60 Kansas, 151; *Indianapolis & G. R. R.* v. *Foreman,* 162 Indiana, 85; *Taylor* v. *Southern Railway,* 178 Fed. Rep. 380; *St. Louis & St. F. R. R.* v. *Delk,* 158 Fed. Rep. 931.

The car involved in this case bore the same relation to interstate commerce that it would have borne had it

been in the repair shop awaiting repairs, and under those circumstances the men engaged in repairing the car would not have been engaged in interstate commerce or any other commerce.

The carrier is not liable for the negligence of an intrastate employé. *Zikos* v. *Oregon Railroad & Navigation Co.,* 179 Fed. Rep. 893.

The act seeks to regulate the relations of the employer to the members of the family of a deceased employé, which Congress cannot do under its power to regulate commerce.

In this respect the act invades the settled limits of the sovereignty of the States, *Williams* v. *Fears,* 179 U. S. 270, and also seeks to determine the administration of the estates of deceased persons. Congress has not the power to create the duties of an administrator. The power of the administrator is limited by the authority granted him by the State which created his office.

A strict construction of this statute, which alters the common law, is required, and no sufficient provision has been made for the assessment of damages. *Sewall* v. *Jones,* 26 Massachusetts, 9 Pick. 412; *United States* v. *Fisher,* 2 Cranch, 358; *Shaw* v. *Railroad Co.,* 101 U. S. 557.

*Mr. Endicott P. Saltonstall,* with whom *Mr. George D. Burrage* was on the brief, for plaintiff in error in No. 290, and defendant in error in No. 289:

The Employers' Liability Act of 1906 was declared unconstitutional because it was addressed to all common carriers engaged in interstate commerce, and imposed a liability upon them in favor of any of their employés, without qualification or restriction as to the business in which the carriers or their employés might be engaged at the time of the injury. *Employers' Liability Cases,* 207 U. S. 498.

Immediately thereafter Congress enacted the act of April 22, 1908, and met the objections to the former act. See report of House Committee on the Judiciary on House Bill 20310; Thornton's Employers' Liability, 247–260: The act has been passed on and upheld in *Watson* v. *St. Louis, I. M. & S. Ry. Co.*, 169 Fed. Rep. 942; *Colasurdo* v. *Central R. R. of N. J.*, 180 Fed. Rep. 832; *Zikos* v. *Oregon R. & N. Co.*, 179 Fed. Rep. 893; *Fulgham* v. *Midland Valley R. Co.*, 167 Fed. Rep. 660; *Winfree* v. *Northern Pac. Ry. Co.*, 173 Fed. Rep. 65; *Dewberry* v. *Southern Ry. Co.* 175 Fed. Rep. 307; *Bottoms* v. *Louis & S. F. R. Co.*, 179 Fed. Rep. 318, and held unconstitutional only in *Hoxie* v. *N. Y., N. H. & H. R. R. Co.*, 82 Connecticut, 354, and *Mondou* v. *Same*, 82 Connecticut, 373.

Congress has power to regulate the relations of master and servant as between an interstate carrier and an interstate employé. *State* v. *Chicago, M. & St. Paul R. Co.*, 136 Wisconsin, 407, at 410.

Congress has power, in regulating the relations of master and servant, as aforesaid, to make an interstate carrier liable to an interstate employé for the negligence of an intrastate employé. *Watson* v. *St. Louis &c. Ry. Co., supra*; *United States* v. *Col. & N. W. R. R. Co.*, 157 Fed. Rep. 321; *The Daniel Ball*, 10 Wall. 557, 566; *In re Debs*, 158 U. S. 564, 599; *United States* v. *Burlington &c. Ferry Co.*, 21 Fed. Rep. 331, 340; *The Hazel Kirke*, 25 Fed. Rep. 601, 607.

If the act is constitutional, but applies only where the negligent fellow-servant is engaged in interstate commerce, the road is liable, as there was evidence that the negligence which caused the accident was that of interstate employés.

The provisions of the act in this respect are separable, and liability may be upheld where the injury is caused by an interstate employé, although denied where caused by an intrastate employé. *Zikos* v. *Oregon R. & N. Co. supra,*

The act does not violate either the Fifth or the Fourteenth Amendment. *Missouri Pacific Ry. Co.* v. *Mackey,* 127 U. S. 205; *Minneapolis &c. Ry. Co.* v. *Herrick,* 127 U. S. 210; *Chicago &c. R. R.* v. *Pontius,* 157 U. S. 209; *Louisville & Nashville R. R. Co.* v. *Melton,* 218 U. S. 36; *Tullis* v. *Lake Erie & W. R. R. Co.,* 175 U. S. 348; *Pittsburg &c. Ry. Co.* v. *Ross,* 212 U. S. 560.

Congress has power to provide a remedy to an injured employé of an interstate carrier as provided in § 3 of the act; *The Max Morris,* 137 U. S. 1, 14; *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1; *Schlemmer* v. *Buffalo &c. Ry. Co.,* 205 U. S. 1.

The common-law rule that contributory negligence is a bar to recovery may be altered or abolished by the legislature whenever, in its discretion, it sees fit to do so. *Munn* v. *Illinois,* 94 U. S. 113, 134; *Hurtado* v. *People of California,* 110 U. S. 516; see also *Wilmington Mining Co.* v. *Fulton,* 205 U. S. 60, 74; *Bertholf* v. *O'Reilly,* 74 N. Y. 509, 524.

A legislature may by statute extend the common-law liability of a railroad, *Chicago &c. Ry. Co.* v. *Zernecke,* 183 U. S. 582; *St. Louis &c. Ry. Co.* v. *Taylor,* 210 U. S. 281; or limit it, *Martin* v. *Pittsburg &c. R. R.,* 203 U. S. 284.

The act is not invalid as violating the constitution and statutes of Connecticut, because it has been held unconstitutional in that State. *Nashville &c. Ry. Co.* v. *Alabama,* 128 U. S. 96, 99.

It is not necessary that an act of this nature should make any provision for the assessment of damages. If it makes none, the jury will be instructed as to the manner of assessing damages, and these instructions will be based upon the principles of the common law governing actions of tort for personal injury.

The Safety Appliance Act is a penal statute, and there are no words specifically giving an injured employé a right

of action for damages, much less providing how those damages shall be assessed. *Johnson* v. *Southern Pac. Co., supra; Schlemmer* v. *Buffalo &c. Ry. Co., supra.*

Congress can create such a right of action in favor of personal representatives of an inhabitant of a State.

Congress may, within constitutional limits, alter or modify the common law. A state statute as to distribution of estates can stand on no higher ground. *Sherlock* v. *Alling,* 93 U. S. 99, 104.

Congress has power to abolish the doctrine of assumption of risk, as provided in § 4 of the act. *Johnson* v. *Southern Pac. Co.; Schlemmer* v. *Buffalo &c. R. Co., supra.*

Congress has power to declare void a contract which enables a common carrier to exempt itself from liability under the act, as provided in § 5.

The company and the deceased were engaged in interstate commerce at the time of the accident.

The car which was backed or "kicked" down upon the car under which Walsh was working was a car belonging to the company, coupled to an Erie flat car.

The single fact that the car which deceased undertook to repair contained perishable freight brought from outside the State where the accident happened is sufficient to show that the company was engaged in interstate commerce at the time. *The Daniel Ball, supra; Wabash &c. Ry. Co.* v. *Illinois,* 118 U. S. 557; *Norfolk &c. Ry. Co.* v. *Pennsylvania,* 136 U. S. 114; *United States* v. *Col. & Northwestern Ry. Co., supra;* and see also *United States* v. *Chicago &c. Ry. Co.,* 149 Fed. Rep. 486, 490; *United States* v. *St. Louis &c. R. Co.,* 154 Fed. Rep. 516; *United States* v. *Illinois Cent. R. R.,* 156 Fed. Rep. 182, 193; *United States* v. *Wheeling &c. R. R. Co.,* 167 Fed. Rep. 198; *Wabash R. Co.* v. *United States,* 168 Fed. Rep. 1; *Belt Ry. Co.* v. *United States,* 168 Fed. Rep. 542; *Chicago Junc. Ry. Co.* v. *King,* 169 Fed. Rep. 372; *United States* v. *Southern Ry. Co.,* 170 Fed. Rep. 1014; *Johnson* v. *Great*

*Northern Ry. Co.*, 178 Fed. Rep. 643, 646; *Felt* v. *Denver &c. R. Co.*, 110 Pac. Rep. 215.

MR. JUSTICE VAN DEVANTER, after stating the cases as above, delivered the opinion of the court.

The principal questions presented in these cases as discussed at the bar and in the briefs are: 1. May Congress, in the exertion of its power over interstate commerce, regulate the relations of common carriers by railroad and their employés while both are engaged in such commerce? 2. Has Congress exceeded its power in that regard by prescribing the regulations which are embodied in the act in question? 3. Do those regulations supersede the laws of the States in so far as the latter cover the same field? 4. May rights arising under those regulations be enforced, as of right, in the courts of the States when their jurisdiction, as fixed by local laws, is adequate to the occasion?

The clauses in the Constitution (Art. I, § 8, clauses 3 and 18) which confer upon Congress the power "to regulate commerce . . . among the several States" and "to make all laws which shall be necessary and proper" for the purpose have been considered by this court so often and in such varied connections that some propositions bearing upon the extent and nature of this power have come to be so firmly settled as no longer to be open to dispute, among them being these:

1. The term "commerce" comprehends more than the mere exchange of goods. It embraces commercial intercourse in all its branches, including transportation of passengers and property by common carriers, whether carried on by water or by land.

2. The phrase "among the several States" marks the distinction, for the purpose of governmental regulation, between commerce which concerns two or more States and commerce which is confined to a single State and does

not affect other States, the power to regulate the former being conferred upon Congress and the regulation of the latter remaining with the States severally.

.3. "To regulate," in the sense intended, is to foster, protect, control and restrain, with appropriate regard for the welfare of those who are immediately concerned and of the public at large.

4. This power over commerce among the States, so conferred upon Congress, is complete in itself, extends incidentally to every instrument and agent by which such commerce is carried on, may be exerted to its utmost extent over every part of such commerce, and is subject to no limitations save such as are prescribed in the Constitution. But, of course, it does not extend to any matter or thing which does not have a real or substantial relation to some part of such commerce.

5. Among the instruments and agents to which the power extends are the railroads over which transportation from one State to another is conducted, the engines and cars by which such transportation is effected, and all who are in any wise engaged in such transportation, whether as common carriers or as their employés.

6. The duties of common carriers in respect of the safety of their employés, while both are engaged in commerce among the States, and the liability of the former for injuries sustained by the latter, while both are so engaged, have a real or substantial relation to such commerce, and therefore are within the range of this power. *Cooley* v. *Board of Wardens*, 12 How. 299, 315–317; *The Lottawanna,* 21 Wall. 558, 577; *Sherlock* v. *Alling*, 93 U. S. 99, 103–105; *Smith* v. *Alabama*, 124 U. S. 465, 479; *Nashville &c. Ry. Co.* v. *Alabama*, 128 U. S. 96, 99; *Peirce* v. *Van Dusen*, 78 Fed. Rep. 693, 698–700; *Baltimore & Ohio R. R. Co.* v. *Baugh*, 149 U. S. 368, 378; *Patterson* v. *Bark Eudora*, 190 U. S. 169, 176; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1; *Schlemmer* v. *Buffalo &c. Ry. Co.*, 205 U. S. 1; *Em-*

*ployers' Liability Cases,* 207 U. S. 463, 495; *Adair* v. *United States,* 208 U. S. 161; 176–178; *Baltimore & Ohio R. R. Co.* v. *Interstate Commerce Commission,* 221 U. S. 612, 618; *Southern Railway Co.* v. *United States,* 222 U. S. 20.

As is well said in the brief prepared by the late Solicitor-General: "Interstate commerce—if not always, at any rate when the commerce is transportation—is an act. Congress, of course, can do anything which, in the exercise by itself of a fair discretion, may be deemed appropriate to save the act of interstate commerce from prevention or interruption, or to make that act more secure, more reliable or more efficient. The act of interstate commerce is done by the labor of men and with the help of things; and these men and things are the agents and instruments of the commerce. If the agents or instruments are destroyed while they are doing the act, commerce is stopped; if the agents or instruments are interrupted, commerce is interrupted; if the agents or instruments are not of the right kind or quality, commerce in consequence becomes slow or costly or unsafe or otherwise inefficient; and if the conditions under which the agents or instruments do the work of commerce are wrong or disadvantageous, those bad conditions may and often will prevent or interrupt the act of commerce or make it less expeditious, less reliable, less economical and less secure. Therefore, Congress may legislate about the agents and instruments of interstate commerce, and about the conditions under which those agents and instruments perform the work of interstate commerce, whenever such legislation bears, or in the exercise of a fair legislative discretion can be deemed to bear, upon the reliability or promptness or economy or security or utility of the interstate commerce act."

In view of these settled propositions, it does not admit of doubt that the answer to the first of the questions before stated must be that Congress, in the exertion of its power over interstate commerce, may regulate the relations

of common carriers by railroad and their employés, while both are engaged in such commerce, subject always to the limitations prescribed in the Constitution, and to the qualification that the particulars in which those relations are regulated must have a real or substantial connection with the interstate commerce in which the carriers and their employés are engaged.

We come, then, to inquire whether Congress has exceeded its power in that regard by prescribing the regulations embodied in the present act. It is objected that it has, (1) because the abrogation of the fellow-servant rule, the extension of the carrier's liability to cases of death, and the restriction of the defenses of contributory negligence and assumption of risk have no tendency to promote the safety of the employés or to advance the commerce in which they are engaged; (2) because the liability imposed for injuries sustained by one employé through the negligence of another, although confined to instances where the injured employé is engaged in interstate commerce, is not confined to instances where both employés are so engaged; and (3) because the act offends against the Fifth Amendment to the Constitution (a) by unwarrantably interfering with the liberty of contract and (b) by arbitrarily placing all employers engaged in interstate commerce by railroad in a disfavored class and all their employés engaged in such commerce in a favored class.

Briefly stated, the departures from the common law made by the portions of the act against which the first objection is leveled are these: (a) The rule that the negligence of one employé resulting in injury to another was not to be attributed to their common employer, is displaced by a rule imposing upon the employer responsibility for such an injury, as was done at common law when the injured person was not an employé; (b) the rule exonerating an employer from liability for injury sustained by an employé through the concurring negligence of the em-

ployer and the employé is abrogated in all instances where the employer's violation of a statute enacted for the safety of his employés contributes to the injury, and in other instances is displaced by the rule of comparative negligence, whereby the exoneration is only from a proportional part of the damages corresponding to the amount of negligence attributable to the employé; (c) the rule that an employé was deemed to assume the risk of injury, even if due to the employer's negligence, where the employé voluntarily entered or remained in the service with an actual or presumed knowledge of the conditions out of which the risk arose, is abrogated in all instances where the employer's violation of a statute enacted for the safety of his employés contributed to the injury; and (d) the rule denying a right of action for the death of one person caused by the wrongful act or neglect of another is displaced by a rule vesting such a right of action in the personal representatives of the deceased for the benefit of designated relatives.

Of the objection to these changes it is enough to observe:

First. "A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed; and to adapt it to the changes of time and circumstances." *Munn* v. *Illinois*, 94 U. S. 113, 134; *Martin* v. *Pittsburg & Lake Erie R. R. Co.*, 203 U. S. 284, 294; *The Lottawanna*, 21 Wall. 558, 577; *Western Union Telegraph Co.* v. *Commercial Milling Co.*, 218 U. S. 406, 417.

Second. The natural tendency of the changes described

is to impel the carriers to avoid or prevent the negligent acts and omissions which are made the bases of the rights of recovery which the statute creates and defines; and, as whatever makes for that end tends to promote the safety of the employés and to advance the commerce in which they are engaged, we entertain no doubt that in making those changes Congress acted within the limits of the discretion confided to it by the Constitution. *Lottery Case*, 188 U. S. 321, 353, 355; *Atlantic Coast Line R. R. Co.* v. *Riverside Mills*, 219 U. S. 186, 203.

We are not unmindful that that end was being measurably attained through the remedial legislation of the several States, but that legislation has been far from uniform, and it undoubtedly rested with Congress to determine whether a national law, operating uniformly in all the States upon all carriers by railroad engaged in interstate commerce, would better subserve the needs of that commerce. *The Lottawanna*, 21 Wall. 558, 581–582; *Baltimore & Ohio R. R.* v. *Baugh*, 149 U. S. 368, 378–379.

The second objection proceeds upon the theory that, even although Congress has power to regulate the liability of a carrier for injuries sustained by one employé through the negligence of another where all are engaged in interstate commerce, that power does not embrace instances where the negligent employé is engaged in intrastate commerce. But this is a mistaken theory, in that it treats the source of the injury, rather than its effect upon interstate commerce, as the criterion of congressional power. As was said in *Southern Railway Co.* v. *United States*, 222 U. S. 20, 27, that power is plenary and competently may be exerted to secure the safety of interstate transportation and of those who are employed therein, no matter what the source of the dangers which threaten it. The present act, unlike the one condemned in *Employers' Liability Cases*, 207 U. S. 463, deals only with the liability of a carrier engaged in interstate commerce for injuries sus-

tained by its employés while engaged in such commerce. And this being so, it is not a valid objection that the act embraces instances where the causal negligence is that of an employé engaged in intrastate commerce; for such negligence, when operating injuriously upon an employé engaged in interstate commerce, has the same effect upon that commerce as if the negligent employé were also engaged therein.

Next in order is the objection that the provision in § 5, declaring void any contract, rule, regulation or device, the purpose or intent of which is to enable a carrier to exempt itself from the liability which the act creates, is repugnant to the Fifth Amendment to the Constitution as an unwarranted interference with the liberty of contract. But of this it suffices to say, in view of our recent decisions in *Chicago, Burlington & Quincy Railroad Co. v. McGuire,* 219 U. S. 549; *Atlantic Coast Line Railroad Co. v. Riverside Mills,* 219 U. S. 186, and *Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission,* 221 U. S. 612, that if Congress possesses the power to impose that liability, which we here hold that it does, it also possesses the power to insure its efficacy by prohibiting any contract, rule, regulation or device in evasion of it.

Coming to the question of classification, it is true that the liability which the act creates is imposed only on interstate carriers by railroad, although there are other interstate carriers, and is imposed for the benefit of all employés of such carriers by railroad who are employed in interstate commerce, although some are not subjected to the peculiar hazards incident to the operation of trains or to hazards that differ from those to which other employés in such commerce, not within the act, are exposed. But it does not follow that this classification is violative of the "due process of law" clause of the Fifth Amendment. Even if it be assumed that that clause is equivalent to the "equal protection of the laws" clause of the Four-

teenth Amendment, which is the most that can be claimed for it here, it does not take from Congress the power to classify, nor does it condemn exertions of that power merely because they occasion some inequalities. On the contrary, it admits of the exercise of a wide discretion in classifying according to general, rather than minute, distinctions, and condemns what is done only when it is without any reasonable basis, and therefore is purely arbitrary. *Lindsley* v. *Carbonic Gas Co.*, 220 U. S. 61, 78. Tested by these standards, this classification is not objectionable. Like classifications of railroad carriers and employés for like purposes, when assailed under the equal protection clause, have been sustained by repeated decisions of this court. *Missouri Pacific Railway Co.* v. *Mackey*, 127 U. S. 205; *Louisville & Nashville Railroad Co.* v. *Melton*, 218 U. S. 36; *Mobile, Jackson & Kansas City Railroad Co.* v. *Turnipseed*, 219 U. S. 35.

It follows that the answer to the second of the questions before stated must be that Congress has not exceeded its power by prescribing the regulations embodied in the present act.

The third question, whether those regulations supersede the laws of the States in so far as the latter cover the same field, finds its answer in the following extracts from the opinion of Chief Justice Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316:

(p. 405) "If any one proposition could command the universal assent of mankind, we might expect it would be this:—that the government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result necessarily from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all. Though any one State may be willing to control its operations, no State is willing to allow others to control them. The nation, on those subjects on which it can act, must necessarily bind its com-

ponent parts. But this question is not left to mere reason: the people have, in express terms, decided it, by saying, 'this constitution, and the laws of the United States, which shall be made in pursuance thereof, . . . shall be the supreme law of the land,' and by requiring that the members of the state legislatures, and the officers of the executive and judicial departments of the States, shall take the oath of fidelity to it. The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, 'anything in the constitution or laws of any State, to the contrary notwithstanding.'

(p. 426) "This great principle is, that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them."

And particularly apposite is the repetition of that principle in *Smith* v. *Alabama*, 124 U. S. 465, 473:

"The grant of power to Congress in the Constitution to regulate commerce with foreign nations and among the several States, it is conceded, is paramount over all legislative powers which, in consequence of not having been granted to Congress, are reserved to the States. It follows that any legislation of a State, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority."

True, prior to the present act the laws of the several States were regarded as determinative of the liability of employers engaged in interstate commerce for injuries received by their employés while engaged in such commerce. But that was because Congress, although empowered to regulate that subject, had not acted thereon, and because the subject is one which falls within the police

power of the States in the absence of action by Congress. *Sherlock* v. *Alling*, 93 U. S. 99; *Smith* v. *Alabama*, 124 U. S. 465, 473, 480, 482; *Nashville &c. Railway* v. *Alabama,* 128 U. S. 96, 99; *Reid* v. *Colorado*, 187 U. S. 137, 146. The inaction of Congress, however, in no wise affected its power over the subject. *The Lottawanna*, 21 Wall. 558, 581; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 215. And now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is. *Gulf, Colorado and Santa Fe Railway Co.* v. *Hefley*, 158 U. S. 98, 104; *Southern Railway Co.* v. *Reid*, 222 U. S. 424; *Northern Pacific Railway Co.* v. *Washington*, 222 U. S. 370.

We come next to consider whether rights arising under the congressional act may be enforced, as of right, in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion. The first of the cases now before us was begun in one of the Superior Courts of the State of Connecticut, and, in that case, the Supreme Court of Errors of the State answered the question in the negative. That, however, was not because the ordinary jurisdiction of the Superior Courts, as defined by the constitution and laws of the State, was deemed inadequate or not adapted to the adjudication of such a case, but because the Supreme Court of Errors was of opinion (1) that the congressional act impliedly restricts the enforcement of the rights which it creates to the Federal courts, and (2) that, if this be not so, the Superior Courts are at liberty to decline cognizance of actions to enforce rights arising under that act, because (a) the policy manifested by it is not in accord with the policy of the State respecting the liability of employers to employés for injuries received by the latter while in the service of the former, and (b) it would be inconvenient and confusing for the same court, in dealing with cases of the

same general class, to apply in some the standards of right established by the congressional act and in others the different standards recognized by the laws of the State.

We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the Federal courts. The act contains nothing which is suggestive of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act, "That the circuit courts of the United States shall have original cognizance, *concurrent with the courts of the several States*, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, *and arising under the Constitution or laws of the United States*." August 13, 1888, 25 Stat. 433, c. 866, § 1. *Robb* v. *Connolly*, 111 U. S. 624, 637; *United States* v. *Barnes*, 222 U. S. 513. This is emphasized by the amendment engrafted upon the original act in 1910, to the effect that "The jurisdiction of the courts of the United States under this Act shall be *concurrent with that of the courts of the several States*, and no case arising under this Act and brought in any state court of competent jurisdiction shall be removed to any court of the United States." The amendment, as appears by its language, instead of granting jurisdiction to the state courts, presupposes that they already possessed it.

Because of some general observations in the opinion of the Supreme Court of Errors, and to the end that the remaining ground of decision advanced therein may be more accurately understood, we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary ju-

risdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure.   We say "when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion," because we are advised by the decisions of the Supreme Court of Errors that the Superior Courts of the State are courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that State, but also in cases where it arose in another State, under its laws, and in circumstances in which the laws of Connecticut give no right of recovery, as where the causal negligence was that of a fellow-servant.

The suggestion that the act of Congress is not in harmony with the policy of the State, and therefore that the courts of the State are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist.   When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all.   That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State.   As was said by this court in *Claflin* v. *Houseman*, 93 U. S. 130, 136, 137:

"The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are.   The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty. . . . .   If an act of Congress gives a penalty [meaning civil and remedial] to a party aggrieved, without

specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, **nor** to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. . . . It is true, the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of *Ableman* v. *Booth*, 21 How. 506; and hence the state courts have no power to revise the action of the Federal courts, nor the Federal the state, except where the Federal Constitution or laws are involved. But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied."

We are not disposed to believe that the exercise of jurisdiction by the state courts will be attended by any appreciable inconvenience or confusion; but, be this as it may, it affords no reason for declining a jurisdiction conferred by law. The existence of the jurisdiction creates an implication of duty to exercise it; and that its exercise may be onerous does not militate against that implication. Besides, it is neither new nor unusual in judicial proceedings to apply different rules of law to different situations and subjects, even although possessing some elements of similarity, as where the liability of a public carrier for personal injuries turns upon whether the injured person

was a passenger, an employé or a stranger.  But it never has been supposed that courts are at liberty to decline cognizance of cases of a particular class merely because the rules of law to be applied in their adjudication are unlike those applied in other cases.

We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion.

In No. 289 several rulings in the progress of the cause, not covered by what already has been said, are called in question, but it suffices to say of them that they have been carefully considered, and that we find no reversible error in them.

> *In Nos. 170, 289 and 290 the judgments are affirmed, and in No. 120 the judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.*