*BENJAMIN S. WARREN, ET AL., V. ARTHUR J. HANNON.

1. **Act 99 O. L. 25 Void as to Interstate Commerce, Valid as to Intrastate.**

   The Act 99 O. L. 25 (Gen. Code 9017) insofar as it undertakes to impose a liability on common carriers by railroad while engaged in interstate commerce is void, but insofar as it undertakes to impose the same liability on such carriers while engaged in intrastate commerce is a valid enactment.

2. **Failure to Distinguish between Railroad Carriers Engaged in State and Interstate Commerce.**

   The language of the act which divides railroads into those which are in whole, and those which are in part, within the state does not distinguish between common carriers by railroad, when engaged in interstate commerce and when engaged in intrastate commerce, furnish an universal rule applying to all eral regulation, would apply to all commerce; but there is nothing in the act to warrant the presumption that the legis-

---

*Affirmed, no op., Warren v. Hannon, 90 O. S. 000; 59 Bull. 43.

Lawrence County Circuit.

lature would not have passed it were it to be superseded, as it was, by the act of congress of April 22, 1908, insofar as it applied to interstate commerce.

**3. State and Federal Acts Eliminating Rule of Fellow Servant Doctrine Universal.**

The Act of Congress passed April 22, 1908, and said Statute of Ohio, impose upon common carriers by railroad a liability for injury to any of their employes resulting from the negligence of any other of their employes, and thus eliminate the defense founded upon the negligence of a fellow servant. These two acts, the one applying to interstate commerce and the other to intrastate commerce, furnish a universal rule applying to all actions, for personal injuries, to an employe of common carriers by railroad, caused by the negligence of any other employe.

**4. Failure of Petition for Negligence of Railroad to Distinguish between State and Interstate Commerce does not Defeat Recovery.**

Hence, in an action, for personal injuries, brought by a locomotive engineer, when injured in the discharge of his duties on one train, in a collision caused by the negligence of the conductor of the other train, an instruction given to the jury, substantially in the language of the second paragraph of Sec. 1 of the act of February 28, 1908, there being no averment in the pleadings nor evidence in the case as to whether, at the time he was injured, he was engaged in interstate or intrastate commerce, is a proper instruction.

[Syllabus by the court.]

ERROR to common pleas court.

*E. H. Willis, Cooper & Russell,* for plaintiffs in error.

*A. R. Johnson,* for defendant in error:

Cited and commented upon by the following authorities:— *Snyder* v. *Railway,* 60 Ohio St. 487 [54 N. E. Rep. 475]; *Railway* v. *Margrat,* 51 Ohio St. 130 [37 N. E. Rep. 11]; *Little Miami Ry.* v. *Stevens,* 20 Ohio 416; *Baltimore & O. Ry.* v. *Camp,* 65 Fed. Rep. 953 [13 C. C. A. 233]; *Toledo Elec. St. Ry.* v. *Bateman,* 8 Circ. Dec. 220 (16 R. 162); *Lake Shore & M. S. Ry.* v. *Hunter,* 7 Circ. Dec. 206 (13 R. 441); *Baltimore & O. Ry.* v. *Sutherland,* 4 Circ. Dec. 115 (12 R. 309); *Feltin* v. *Harbeson,* 104 Fed. Rep. 737 [44 C. C. A. 188]; *Rouse* v. *Hornsby,* 67 Fed. Rep. 219 [14 C. C. A. 377]; *Brooks* v. *Railway,* 207 U. S. 463 [28 Sup. Ct. Rep. 141; 52 L. Ed. 297]; *Detroit T. & I. Ry.* v. *State,* 82 Ohio St. 60 [91 N. E. Rep. 869; 137 Am. St. Rep. 758]; *McGarvey* v. *Railway,* 83 Ohio St. 273 [94 N. E. Rep. 424]; *Peirce* v. *VanDusen,* 78 Fed. Rep. 693 [24 C. C. A. 280;

Warren v. Hannon.

69 L. R. A. 705]; *Hennington* v. *Georgia,* 163 U. S. 299 [16 Sup. Ct. Rep. 1086; 41 L. Ed. 166]; *Missouri Pac. Ry.* v. *Mackey,* 127 U. S. 205 [8 Sup. Ct. Rep. 1161; 32 L. Ed. 107]; *Hunter* v. *Bridge Co.* 85 Fed. Rep. 379 [29 C. C. A. 206; 54 U. S. 653]; *Tullis* v. *Railway,* 175 U. S. 348 [20 Sup. Ct. Rep. 136; 44 L. Ed. 192]; *Pittsburgh, C. C. & St. L. Ry.* v. *Montgomery,* 152 Ind. 1 [49 N. E. Rep. 582; 69 L. R. A. 875; 71 Am. St. Rep. 300]; *Mondou* v. *Railway,* 223 U. S. 1 [38 L. R. A. (N. S.) 44; 56 L. Ed. 327]; *State* v. *Railway,* 36 Mont. 582 [93 Pac. Rep. 945; 15 L. R. A. (N. S.) 134; 13 Ann. Cas. 144]; *Smith* v. *Alabama,* 124 U. S. 465 [8 Sup. Ct. Rep. 564; 31 L. Ed. 508]; *Cleveland, C. C. & St. L. Ry.* v. *Illinois,* 177 U. S. 514 [20 Sup. Ct. Rep. 722; 44 L. Ed. 868]; *Nashville, C. & St. L. Ry.* v. *Alabama,* 128 U. S. 96 [9 Sup. Ct. Rep. 28; 32 L. Ed. 352]; *Western Union Tel. Co.* v. *James,* 162 U. S. 650 [16 Sup. Ct. Rep. 934; 40 L. Ed. 1105]; *Chicago & N. Ry.* v. *Fuller,* 84 U. S. (17 Wall.) 560 [21 L. Ed. 710]; *Louisville & N. Ry.* v. *Kentucky,* 161 U. S. 677 [16 Sup. Ct. Rep. 714; 40 L. Ed. 849]; *New York, N. H. & H. Ry.* v. *People,* 165 U. S. 628 [17 Sup. Ct. Rep. 418; 41 L. Ed. 853]; *Chicago, M. & St. P. Ry.* v. *Solan,* 169 U. S. 133 [18 Sup. Ct. Rep. 289; 42 L. Ed. 689]; *People* v. *Railway,* 198 N. Y. 369 [91 N. E. Rep. 849; 29 L. R. A. (N. S.) 240; 139 Am. St. Rep. 828; 19 Ann. Cas. 811]; *Lloyd* v. *Railway,* 151 N. C. 536 [66 N. E. Rep. 604]; *Reid* v. *Railway,* 150 N. C. 753 [64 N. E. Rep. 874; 17 Ann. Cas. 247]; *Sinnot* v. *Davenport,* 63 U. S. (22 How.) 227 [16 L. Ed. 243]; *McAllister* v. *Hartzell,* 60 Ohio St. 69 [53 N. E. Rep. 715]; *Sites* v. *Haverstock,* 23 Ohio St. 626; *Beecher* v. *Dunlap,* 52 Ohio St. 64 [38 N. E. Rep. 795]; *Butler* v. *Kneeland,* 23 Ohio St. 196; *State* v. *Esswein,* 30 O. C. C. 515 (11 N. S. 225).

**SAYRE, J.**

On December 13, 1910, the plaintiffs in error, as receivers of the Detroit, Toledo and Ironton Railway Company, were operating a railroad extending from Detroit in the state of Michigan, to Ironton in the state of Ohio, and the defendant in error was employed by them as a locomotive engineer; and on said day he was ordered by them to take a freight train, made

up of thirteen freight cars and a caboose, from Ironton to Lisman Junction, a station on said railroad about eleven miles north of Ironton in Lawrence county. When about two and a half miles north of Ironton the train, on which defendant in error was engineer, collided with another train, coming south, and he, then and there, received the injuries on account of which he brought this action in the court of common pleas of said county. In that court he recovered a judgment for $19,000 and the object of this proceeding in error is to reverse that judgment.

In his petition filed in the court of common pleas, Hannon stated that his injuries "were caused by reason of the carelessness, negligence and unskillful management of the defendants, their agents and employes in the discharge of their duties."

The answer of the defendants admitted the collision and the injury to plaintiff and denied that the injury was caused by reason of any carelessness, negligence or unskillful management of the defendants in the discharge of their duties, but averred that if the injury was caused by careless and negligent acts then those acts were the acts of fellow servants of plaintiff who were employed in conjunction with said plaintiff in the performance of a common business, and that neither of said fellow servants, the engineer and conductor upon said south bound freight train, nor said plaintiff, while engaged in said business, had any control or authority over each other.

The jury found, in response to a special interrogatory, that the proximate cause of the injury was the failure of the conductor of the south bound train to procure an order or clearance card at Lisman Junction. Before argument at the request of counsel for plaintiff, and over objection of defendants, the court gave the following instruction:

"If you find from a preponderance of the evidence that defendants were operating a railroad, a part of which was in the state of Ohio, and that plaintiff was an employe of defendants as an engineer upon one of its railroad trains and operating one of the railroad engines, the accident by which plaintiff was injured occurred by a head-on collision in Lawrence county, Ohio, and that plaintiff was in the discharge of

his duties as an engineer upon said engine, as an employe of the defendants at said time of said collision, and the receiving of the injuries complained of by plaintiff, and that said collision was caused by the carelessness and negligence of any other employe or agent of defendants while in the discharge of or failure to discharge his duty or duties as such employe of defendants, then in that event said defendants would be liable to plaintiff for any and all injuries plaintiff received by reason of said collision.''

The claim of the defendants is that the act of congress approved April 22, 1908, is exclusive and supersedes the acts of the legislature of the state of Ohio on the same subject; that the statute, 99 O. L. 25, is invalid and that as the plaintiff does not show he was injured while he was engaged in interstate commerce he can not recover.

It is not stated in the pleadings, nor shown in the proof whether defendant in error, when injured, was engaged in interstate or intrastate commerce. The special charge given by the trial court permits a recovery irrespective of the character of the business in which plaintiff was engaged when injured.

The act of congress approved April 22, 1908, (35 Stat. at L. 65, Chap. 149, U. S. Comp. Stat. Supp. 1909, p. 1171) reads in part as follows:

''That every common carrier by railroad, while engaging in commerce between any of the states————shall be liable in damages to any person suffering injury while he is employed by such carrier in said commerce————for such injury ————resulting in whole or in part from the negligence of any of the officers, agents or employes of said carrier————.''

The act of February 28, 1908 (99 O. L. 25, Gen. Code 9017), reads in part as follows:

''Every railroad company operating any railroad which is in whole or in part within this state shall be liable for all damages sustained by any of its employes by reason of personal injury————.

2. While any such employe is engaged in operating, running, riding upon or switching passenger, freight or other trains, engines or cars and while engaged in the performance

of his duties as such employe, and when such injury shall have been caused by the carelessness or negligence of any other employe, officer or agent of such company in the discharge of or for failure to discharge his duties as such.''

It is evident that this statute imposes upon all common carriers by railroad the same liability for injuries to their employes, whether they are engaged in interstate commerce or otherwise.

That the federal statute passed April 22, 1908, imposing a liability on common carriers by railroad for injuries to their employes superseded the act of the Ohio legislature (99 O. L. 25) insofar as the latter act undertakes to fix such liability while said carriers are engaged in interstate commerce, and in actions to recover damages for injuries received while the plaintiff was engaged in such commerce, to eliminate the defense that the negligence which caused the injury was the negligence of a fellow servant, is shown by the cases of *Mondou* v. *Railway,* 223 U. S. 3; *Northern Pac. Ry.* v. *State,* 222 U. S. 369; *State* v. *Railway,* 136 Wis. 407 [117 N. W. Rep. 686; 19 L. R. A. (N. S.) 326.

The power of congress to regulate or limit the liability of common carriers to their employes while engaged in interstate commerce, and to provide what shall and what shall not be a defense in a judicial tribunal in a case arising from an injury received while the person injured was engaged in such commerce, is paramount.

Within the field, where by the constitution congress can act, its power is supreme.

If congress has exercised that power and passed a law, regulating the particular subjects mentioned, the state legislature then is without power to legislate on the same subject, and any and all of its acts on that subject, immediately upon the passage of the federal legislation, become absolutely void.

But the Ohio statute of February 28, 1908, not only undertakes to legislate as to liability of railroads engaged in interstate commerce, but as to the liability of those engaged in state or domestic commerce. It will be conceded that the legislature has power to legislate concerning the persons and

Warren v. Hannon.

instrumentalities engaged in such state or domestic commerce, so that, if the invalid provisions of this statute can be separated from the valid, the act may yet remain effective insofar as it deals with the subject of state commerce.

Is the state statute separable? Can the part of the statute which applies to interstate commerce be separated from the part which applies to state commerce? The language of the first sentence of the act is: "Every railroad company operating any railroad which is in whole or in part within the state shall be liable———." It has been held that if this statute related solely to railroads wholly within the state, it would then only apply to state commerce. But is this reasoning sound? Because a railroad lies wholly within a state it is not for that reason beyond the reach of federal regulation. If it is engaged in interstate commerce it is within the control of federal power precisely as if its line extended from one state into another or through several states. Railroads lying wholly within a state may, and generally are, engaged in interstate commerce by reason of their connections with other carriers. The line which divides the state and federal power to legislate concerning the liability of railroads to their employes, is not defined by the location of the railroads but by the business in which they are engaged. Hence, a law which divides railroads into those which are in whole and those which are in part, within the state, does not distinguish at all between those engaged in interstate commerce, and those engaged in state or domestic commerce. The act operates upon all railroads alike which lie either in whole or in part within the boundaries of the state.

Since the enactment by congress of the statute of April 22, 1908, may not the act of February 28, 1908 (99 O. L. 25), be construed so as to apply only to the liability of common carriers by railroad while engaged in state commerce? In the case of *Howard* v. *Railway,* 207 U. S. 463 [28 Sup. Ct. Rep. 141; 52 L. Ed. 297], in which case the Supreme Court of the United States held invalid the first employer's liability act, it was decided that that act, which attempted to regulate both

state and interstate commerce, could not be construed to apply to a regulation of interstate commerce alone because

(a)   It would require the court to read into the act the words "when engaged in interstate commerce," which would restrict and limit the act when applied to the District of Columbia and the territories, to interstate commerce when the congress in those political divisions has full power to regulate both state and interstate commerce, and would thus destroy the act in an important particular. "To write into the act the qualifying words therefore would be to add to its provisions in order to save it in one respect and thereby to destroy it in another; that is, to destroy in order to save, and to save in order to destroy." And because

(b)   The court held that it was unable to say that the statute would have been enacted had its provisions been limited to the regulation of interstate commerce alone.

In the case of *State* v. *Railway, supra,* it was held that the state statute prohibiting any railroad company from requiring any telegraph or telephone operator to remain on duty for more than one period of eight consecutive hours, when the federal statute made it unlawful to remain on duty for a longer period than nine hours in any twenty-four hour period, could not be separated so as to construe it as applicable to state commerce alone, because the court held that it was not certain that the act would have been passed if the legislature had known that it would be construed to apply only to domestic commerce.

"The impracticability if not impossibility of limiting hours of work devoted to domestic commerce is so obvious as to preclude belief in any such legislative purpose."

It is evident that a telegraph operator would be engaged in interstate and domestic commerce at the same time, and it would be impracticable if not impossible to separate his work in that respect, so that it would be impossible to enforce an eight hour day as to domestic commerce and a nine hour day as to interstate commerce. It is easy to perceive why the court would arrive at the conclusion in construing that kind of a statute, that no such separation of its provisions could be made.

Warren v. Hannon.

But is the state statute under consideration here beset with any such difficulties as those above mentioned? Both cases above referred to uphold the position that a valid provision of a statute may be separated from the invalid, if the same can be done; and it is reasonable to suppose that the legislature would have enacted it if it had been known that the act would have been construed to apply only to domestic commerce.

There would be no difficulty about enforcing the Ohio and federal statutes at the same time, as all that would be required would be to prove whether the person injured was engaged in one or the other kind of commerce, which certainly is not a difficult undertaking, to say nothing of an impracticable or impossible one.

In our state it has been held that "where the provisions of an act are so inseparably connected in subject-matter and so relate to each other as to give rise to a presumption that a part would not have been enacted without the whole, the entire act is void." *Little Miami Ry.* v. *Greene Co.* (*Comrs.*) 31 Ohio St. 338, 344.

And again:

"One part of a section of a statute may be void for want of conformity to the constitution, without affecting the validity of the remainder, unless the objectionable and unobjectionable portions are essentially and inseparably connected in substance, or, are so interdependent that the general assembly would not have enacted the one without the other." *Treasurer* v. *Bank,* 47 Ohio St. 503 [25 N. E. Rep. 697; 10 L. R. A. 196].

Assuming, for the purpose of the discussion, that the presumption would arise that the statute under consideration would not have been passed if the members of the legislature had known that the courts would finally construe it to apply only to domestic commerce, or if they had known that an act of congress would supersede the state statute as to interstate commerce, may not consideration be had of the probable attitude of the members of the legislature toward the subject if they had known that the federal act would impose upon common carriers by railroad the same liability which the state act imposed, and if they had known that the defense founded on

the negligence of a fellow servant would thus be eliminated by the superseding act?

If the courts may speculate with the possible or probable state of mind of the persons, composing the legislature, toward an act which has been held invalid in part, may not they also speculate as to the state of mind of the legislators, as to what they might have done, if a part of their enactment which is rendered nugatory, would be immediately superseded by an act of congress containing the same terms, imposing the same liability, and eliminating the same objectionable defense? What person, if he would vote for the legislation at all, could or would refuse to vote for the statute here construed, with knowledge that it would be superseded by an act of congress that would in effect reenact the same provisions that were thereby rendered void?

We are here presented with a new and curious situation. The cases which we have above referred to, *Mondou* v. *Railway*, and *State* v. *Railway, supra,* concern statutes which were held invalid in part, because the objectionable and unobjectionable portions were so connected that it might be presumed that a part would not have been enacted without the whole, and all the provisions of the acts were held invalid. But in those cases the part that was swept away because unconstitutional was not replaced or superseded by a like provision in the federal law.

In our case when the state statute was superseded by the federal, the latter supplied completely and fully the provisions applicable to interstate commerce which had been swept away.

But another line of reasoning may be suggested. These employer's liability laws are enacted to protect, as far as may be, the employes of common carriers from injuries and death while engaged in the work for which they are employed. Can it be fairly contended that the legislature would refuse to enact legislation protecting them while engaged in domestic commerce simply because they were unable to protect them while engaged in all commerce? Would the legislature because it knew congress might exercise its power and the state law be superseded, by a federal one on the same subject, refuse to afford the protection which alone could be afforded by state

legislation? It seems to us there is but one answer to this question.

In the act to compel common carriers by railroad to equip their cars with automatic couplers, the Ohio legislature (98 O. L. 25) limited the application of the act to domestic commerce, and the purpose of that act was the same as the employer's liability act, namely, to promote the safety of employes of common carriers.

In authority precisely in point is the case of *Philadelphia & R. Ry.* v. *Commonwealth*, 82 U. S. 232 [21 L. Ed. 146], as construed in *Albany Co. (Supvrs.)* v. *Stanley*, 105 U. S. 305 [26 L. Ed. 1050].

The court is firmly of the opinion that the legislature would have passed the act of February 28, 1908, were it to be superseded by the act of April 22, 1908, applying to interstate commerce.

There is then in operation in Ohio, side by side, two laws, one federal, the other state; the one relating to the liability of common carriers to their employes while engaged in interstate commerce and the other relating to the liability of common carriers to their employes while engaged in state commerce. A locomotive engineer, while engaged in operating a locomotive drawing cars on a railroad, must be engaged in either state or interstate commerce. There are no other classes of commerce, known to these laws, limiting such liability. Both laws provide that in case of injury to an employe engaged in the performance of his duties he may recover damages, for such injury, when such injury was caused by the negligence of any other employe, and the defense founded on the negligence of fellow servant can not therefore be made.

These two provisions, the one or the other therefore applying to each and every case, furnish an universal rule governing all actions for personal injuries to an employe of common carriers by railroad caused by any other employe.

The validity of paragraph two of section one of the act of February 28, 1908, would seem to have been established by the

circuit court of the first circuit in *Pittsburgh, C. C. & St. L. Ry.* v. *Francis,* 32 O. C. C. 189 (13 N. S. 167), inasmuch as that judgment was affirmed by the Supreme Court in *Pittsburgh, C. C. & St. L. Ry.* v. *Francis,* 83 Ohio St. 520, without report.

The special instruction given by the trial court was therefore a correct and proper instruction.

This conclusion determines all the other questions in the case and the judgment of the court of common pleas will be affirmed.

**Jones** and **Walters, JJ.,** concur.