## UNITED STATES v. ALTERMAN.
### No. 6928.

District Court, S. D. Florida.
Miami Division.

Feb. 26, 1947.

Fred Botts, Asst. U. S. Atty., of Miami, Fla., for plaintiff.

C. Clyde Atkins and George Chertkof, both of Miami, Fla., for defendant.

RUSSELL, District Judge.

By a pleading designated as a motion to quash, which is considered as a motion to dismiss, the defendant challenges the validity of each and all of the ten counts of an information charging him with specified violations of the regulations issued pursuant to the Second War Powers Act of 1942, 50 U.S.C.A.Appendix, § 631 et seq., and the Veterans' Housing Act of May 22, 1946, Public Law No. 388, 79th Congress, 2nd Session, 50 U.S.C.A.Appendix, § 1821 et seq., and specifically Priority Regulation 33, as amended. The application for priority rating is alleged to have been made by the defendant prior to April 17, 1946, and the defendant contends that prior to the Act of May 22, 1946, known as the Veterans' Emergency Housing Act of 1946, there was no Act of Congress authorizing the regulations issued as Priority Regulation 33, and as amended, which authorized their promulgation and terms as relates to Veterans preference in housing accommodations constructed thereunder. The argument is chiefly predicated upon the proposition that each of the Acts authorizing the system of allocations and priorities all relate to the prosecution of the war so that they are now not in force or applicable. This argument is not sound.

While determination of the various measures by which the grant of the power of allocation and priorities was made by Congress may require some examination of the authorities, when this is done the power of succession and delegation is clear. It flows primarily from the provisions of Title 3, headed "Priorities Powers", section 2(a), Second War Powers Act, 56 Statutes 176, and the Acts amendatory thereof, by which amendments The Congress extended, even after the termination of actual hostilities, the continuance in force of the provisions of Title 3, supra, of the Second War Powers Act until June 30, 1946, 59 Statutes 658, and, even later, 60 Statutes 345, until March 31, 1947, with the expressed provision, however, that "(except that for purposes of allocations of building materials, and facilities related to the utilization of building materials, such title III, and the amendments to existing law made by such title, shall remain in force until June 30, 1947), or until such earlier time as the two Houses of Congress by concurrent resolution, or the President, may designate, * * *." 50 U.S.C.A.Appendix, § 645. This course of legislation, some passed during the period of actual fighting, and some after the end of hostilities, but all prior to the actual termination of the war, discloses clear Congressional construction of the validity of the exercise of the powers under such provisions of the statute during the time in which the defendant is alleged to have violated the cited Priority Regulations.

In addition to such Congressional recognition, it is of course well established law that the actual cessation of hostilities does not remove the power of the exercise of authority granted by war legislation. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194; Ruppert v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260. There

is thus both Congressional and Judicial authority in opposition to the contention of the defendant that the Act upon which the regulations now attacked are sought to be based all related to the prosecution of the war, and therefore could not, at the time in question, validly support the provisions of the regulations.

When examination is made of the line of succession of the Governmental agencies promulgating and enforcing from time to time the power granted to the President by the provisions of the Second War Powers Act, as amended, supra, no illegitimacy is apparent. The First War Powers Act, 55 Statutes 838, 50 U.S.C.A. Appendix, § 601 et seq., authorizes the coordination of the Executive Bureaus in the interest of the more efficient concentration of the Government. Acting thereunder, the President by Executive Order, Jan. 7, 1941, No. 8629 established the Office of Production Management, Code of Federal Regulations, Cumulative Supplement, book 1, page 852, and specifically delegated to such Office the power of the determination of the "priorities" provided in section 2(a) of the Act of June 28, 1940, 54 Statutes 676. This was continued and enlarged by Executive Order, Aug. 28, 1941, No. 8875, Code of Federal Regulations, Cumulative Supplement, Book 1, page 993, and, such power thereafter delegated to the War Production Board, Executive Order Jan. 16, 1942, No. 9024, Code of Federal Regulations, Cumulative Supplement, book 1, page 1079.

By Executive Order 9599, 50 U.S.C.A. Appendix, § 1651 note, Code of Federal Regulations, 1945, Title 3, page 104, predicated upon the authority granted by, among others, the First War Powers Act of 1940, and the Second War Powers Act of 1942, as amended, the War Production Board was directed to use all "of its authorized powers to * * * grant priority assistance to break bottlenecks which would impede the reconversion process," in addition to other ends thereby desired to be secured. By Executive Order 9638, 50 U.S.C.A.Appendix, § 601 note, Code of Federal Regulations, 1945, Title 3, page 125, the War Production Board was abolished and its powers and functions transferred to the Civilian Production Administration, which was directed to utilize its powers to also "grant priority assistance." Acting under these authorities, Priorities Regulation 33 was issued on the 20th day of December, 1945, 10 Federal Register, page 15301, and amended January 11, 1946, 11 Federal Register 601, and on April 12, 1946, 11 Federal Register 4085. Some question may arise as to whether the amendment of April 12, 1946 may be applied to the obligations imposed upon the defendant by his application for HH priority dated April 9, 1946, but granted April 17, 1946. However, as will be shown hereafter, it is not thought that this question will affect the substance of the information.

It is thus clear that both by Statute and by regulations, there is undoubted legal authority to give general support to provisions of Priorities Regulation 33 unless it be that prior to the Act of May 22, 1946, there was no authority stemming from the legislation or the regulations authorizing the grant of preference to veterans of World War II. In the first place, the grant of preference to veterans of the war which has not yet officially terminated, is in a very real sense both "necessary" and supremely "appropriate" in the public interest. Such a preference may be also accurately said to "promote the national defense." While, as stated, we are blessed with peace at the moment, we have a large force now under arms stationed in occupied countries of our legal enemies, and also at home. Even the selection of men for the Armed Forces under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., is still legally in force, and the actual operation thereunder respited at the present time only by a satisfactory volume of voluntary enlistments. No Court, with proper regard for mature judicial conviction, could declare that, in the present unsettled state of affairs in the world, the necessity for remobilization (which God forbid), may not arise. In addition, under our system of government, this is a need which is better known to the other coordinate branches which have both expressed the firm conviction

by their action that there are matters of national defense, somewhat imponderable and undisclosed though they may be, that require the continuance of the requirements and provisions of the actual—war time regulations. It is of course manifest that the efforts made to properly care for veterans who have heretofore engaged in the war, and one of which evidence of care and appreciation is provided by the attempt to properly house them and their families, under the provisions of Priorities Regulation 33, must have a very definite effect upon the manner in which the present and any future defense may be maintained. Thus the regulations issued under the authority of the Statute appear to well meet the test of necessity and appropriateness in the interest of the public and the promotion of national defense.

■ It may be added, that while of course in case of a clear unconstitutional or illegal regulation, consent to obedience thereof might not prevent avoidance of responsibility under such laws or regulations, nevertheless one who exchanges for the grant of priority the promise of obedience to regulations granting it, can only launch his attack from a position of extreme disadvantage, and must of necessity, rely upon a showing of undoubted illegality. Under the grant of priority now involved, the applicant certified that he would observe the restrictions on sales prices and rent to be charged, "and comply with all other provisions of Priorities Regulation 33 or other applicable orders or regulations."

In view of what is said above, it is unnecessary to deal with the questions raised that Priorities Regulation 33, as amended, goes far beyond any authority or provisions of the Act of May 22, 1946. It is believed sufficiently disclosed that the regulations providing preference for veterans are validly supported by statutes in force at the time of their promulgation.

For the reasons above given, the general motion to quash or dismiss the information, and each and every ground thereof, is denied.

■ The several counts of the information seek to charge violations of the various provisions of Priority Regulation 33. The first two counts charge that in a deed of conveyance defendant did not insert a provision giving notice to the grantee of a preference given veterans by the terms of the regulation. There was only one conveyance, and the only difference in the counts is that the first alleges that the defendant could not have lawfully constructed the building without approval under Priority Regulation 33. While it is entirely possible that the charges of the two counts may prove to be identical, this does not necessarily follow. It is not clear that no situation could exist in which by virtue of ownership of material supplies acquired in the past, a building could not be constructed without the use of priorities granted under the terms of the regulation. In any event, this charge could not prove prejudicial to the defendant in his defense.

■ The third, fourth and fifth counts of the indictment relate to the charge of the failure of the defendant to post in a conspicuous place in front of the building being erected a placard as provided by section (c) of Part 944 of PR 33, as amended January 11, 1946, 11 F.R. 601; and as to the successive time requirements of setting up, and keeping up such placard. The third count charges failure to set up such placard within five days after construction had begun; the fourth, failure to keep the placard so set up until completion of the building; and the fifth, failure to keep the placard set up during the period of construction and for thirty days thereafter. While it is true that the charge contained in the fifth count embraces the time period of the violations claimed in the third and fourth counts, no prejudice appears to result to the defendant from not requiring the Government to elect which count they will pursue prior to the coming in of the proof. This for the reason, at least, that defense to the fifth count necessarily embraces the questions relating to the posting of the placard during the antecedent time periods.

■ The sixth count charges that the defendant during the construction of said structure, and for thirty days after its completion, did not publicly offer the

housing accomodations for rent to veterans of World War II, at or below the maximum rental stated in the application. As the provisions of the regulations are construed, and in the light of the other charges in the information, it appears that this count either sets forth no offense, or is clearly the exact repetition in effect of the charge contained in the fifth count. The words "publicly offer" are subject to varying constructions. Common sense and the well known rules of judicial construction would require that these words be restricted to the methods of publication provided in the regulation. These are two-fold: First, the posting of the placard containing the information as to the maximum rentals and preference to veterans as specified in the application; and, secondly, the requirement of paragraph i(2) that the builder, etc., must include a statement in substantially the form given "in any advertisement printed or published in which accommodations built under the Reconversion Housing Program are offered for sale or for rent." It will be noted that this provision does not require that any advertisement be printed or published, and no other method of publishing other than the posting of the placard has been discovered in the regulations. It therefore appears that where the defendant is alleged to be the builder of the structure, posting of the placard is the only public offering required to be made, since it is not charged that any advertisement was printed or published in which the accommodations were offered for rent. It therefore appears that count six states the same offense as is charged in count five. It therefore follows that count six should in this case be stricken.

Counts seven, eight, nine and ten contain the same charges as those set forth in counts three, four, five and six, but relate to another four unit residence structure located on the same premises and covered in the same application which specifies two street numbers and two four-unit apartments. In other words, the same charges are made with reference to each of the two four-unit buildings. What has been said is likewise applicable to these charges, and makes proper the overruling of the motion to strike the seventh, eighth and ninth counts, and require the sustaining of the motion to strike the tenth count. The case has been dealt with on the basis of the effectiveness of Priority Regulation 33 as amended January 11, 1946, supra. So far as can be observed as to the violations charged, there is no material nor substantial difference in any of the terms of the regulation, and the information sufficiently charges violations of PR 33 as amended January 11, 1946. As affects this case, the only difference, it appears, is that this regulation, in the notice required to be inserted in conveyances, contains the additional words after "built (converted) under the Reconversion Housing Program of the Civilian Production Administration" and further, following "(Builder's Serial No. ——)," "and an HH rating was used to get materials for the construction," and an additional statement following "World War II," "or members of the Armed Forces." The charge as contained in the information recites the provisions of such statements in conveyances as contained in the amendment of PR 33 as amended April 12, 1946, 11 F.R. 4085. However the requirements of both regulations are that the statement in the conveyances be in "substantially" the form given. The notices are, certainly so far as affects the first grantor, substantially the same. Therefore, so far as this charge is concerned, it becomes immaterial whether the obligation of the defendant arose under the regulation as amended January 11, 1946, or under the regulation of April 12, 1946, which, however, antedated the date of sale and conveyance, and which under the allegations of the information was in force during a substantial portion of the period of construction.

It is therefore considered, ordered and adjudged that the motion to dismiss be overruled except as to counts six and ten of the information, as to which it is sustained.