BYRON CANTRELL et al., Plaintiffs, *v.* GOLDEN CREST HOMES, INC., Defendant.

City Court of the City of New York, Trial Term, Queens County, March 15, 1948.

*Ralph Farb* for plaintiffs.

*Herman Wollitzer* for defendant.

CONROY, J. This action was tried before the court without a jury. There are three causes of action pleaded in the complaint and three sets of plaintiffs. In each cause substantially the same complaint is made, that the defendant in the sale of a house to the respective plaintiffs charged and received more than the maximum sales price as fixed by the Federal Housing Administration.

Many of the factual issues were admitted by the defendant during the trial. There is no dispute that the defendant sold each set of plaintiffs a house. There is no dispute that the defendant in January of 1946, made written application to the

Federal Housing Administration for a preference rating listing the addresses of these three houses among others in such application. This application was approved by the Federal Housing Administration on January 31, 1946, and a maximum sales price was fixed by the said Federal Housing Administration for each unit at $9,850 and a priority rating was given to the defendant.

The defendant denies that such rating was used to secure materials for such units, but the evidence clearly discloses that the plumbing contractor was given the rating number by an employee of the defendant and used the same in obtaining plumbing materials, and this said contractor stated that without such rating he could not have obtained these materials. The defendant denies that it charged more than the maximum sales price.

In each of these three sales involved herein the same pattern was followed. The contract of sale stated the maximum sales price as fixed by the Federal Housing Administration, but at the time of the execution of the contract of sale the purchasers were required to execute a separate agreement to pay varying amounts to the defendant to furnish and install a gas burner and to construct a cast stone stoop. Each purchaser declared that at the time of making the bargain to purchase, a sales price was fixed without mention of any gas burner or cast stone stoop being extras. The fact that in one instance the defendant charged $850 for these so-called extras and in another $1,650 for the same thing is further proof that this was a plan to obtain more than the maximum sales price under an evasive scheme. In any event the defendant never filed any modification of its plans and never obtained any authorization to charge for any extras, and therefore in no event had any right to make these extra charges.

The defendant in its answer pleads as a separate defense, that the cause of action did not accrue within one year from the commencement of this action and was therefore barred. The defendant cites a section of the Veterans' Emergency Housing Act of 1946 (60 U. S. Stat. 207), as its authority for this contention. Clearly this case does not come under the Veterans' Emergency Housing Act which only became effective in May of 1946 and did not merge any of the functions of the Civil Production Administration.

The defendant now, in a brief submitted to the court, raises three further points: (1) That there is no Federal statute or State statute which affords the plaintiffs the right to bring an

action such as is alleged in the complaint herein. (2) The maximum sales price established by Priorities Regulation 33 is not such a liability or duty imposed, for violation of which plaintiffs may recover damages in this action. (3) That the Civilian Production Administration and its associated administrative agencies whose combined powers went into Priorities Regulation 33 exceeded their powers and indulged in an unauthorized exercise of legislative power.

As to the third objection, it is clear that both by statute and by regulation there is undoubted legal authority to give general support to the provisions of Priorities Regulation 33. The power of succession and delegation flows primarily from the provisions of subdivision (a) of section 2 of the Act of June 28, 1940 (54 U. S. Stat. 676, as amended by section 301 of title III, headed Priorities Powers, Second War Powers Act, 1942; 56 U. S. Stat. 177; U. S. Code, tit. 50, Appendix, §§ 633, 1152).

In *United States* v. *Alterman* (70 F. Supp. 734, 737) the court said: "When examination is made of the line of succession of the Governmental agencies promulgating and enforcing from time to time the power granted to the President by the provisions of the Second War Powers Act, as amended, supra, no illegitimacy is apparent. * * * By Executive Order 9599, 50 U. S. C. A. Appendix, § 1651 note, Code of Federal Regulations, 1945, Title 3, page 104, predicated upon the authority granted by, among others, the First War Powers Act of 1940, and the Second War Powers Act of 1942, as amended, the War Production Board was directed to use all ' of its authorized powers to * * * grant priority assistance to break bottlenecks which would impede the reconversion process ' in addition to the other ends thereby desired to be secured."

As to objections 1 and 2, in *Mondou* v. *New York, New Haven & Hartford R. R. Co.* (223 U. S. 1, 57) in speaking of the Federal Employers' Liability Act, the court said: "When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State."

Our New York courts have repeatedly held that the right to bring an action for damages occasioned by the violation of a statutory liability does not depend upon that right being granted specifically in the statute alleged to have been violated.

In *Abounader* v. *Strohmeyer and Arpe Co.* (243 N. Y. 458,

464, 465–466) Chief Judge HISCOCK said: "Thus under any sensible interpretation it clearly appears that in the enactment of the statute as a whole the Legislature had in mind the purpose of protecting the members of the public from fraud and misrepresentation in the character of foods and also in the quantities of foods and allied commodities which they might purchase which was all a matter of general concern. * * * The fact that penalties are ordained for violations of course furnishes no argument against this conclusion. Civil responsibility and public punishment by common usage have long since been established as appropriate and complementary associates.

"Holding then that this statute was passed for the benefit and protection of the general public and that it imposed upon one like the defendant a duty to the public and each member thereof, it is as we have already indicated well settled that such an one who has suffered from a disregard and violation of the duty has a cause of action for his damages against the one who has disregarded his duty. From the duty and its violation there is implied a cause of action in favor of the one for whose benefit the duty was imposed and who has been injured by its violation."

Quoting from Cooley on Torts, Chief Judge HISCOCK continued (p. 466): " ' it is sufficient to say of the authorities that they recognize the rule as a general one that when the duty imposed by the statute is manifestly intended for the protection and benefit of individuals, the common law, when an individual is injured by the breach of the duty, will supply a remedy if the statute gives none.' "

In *Chotapeg, Inc.,* v. *Bullowa* (291 N. Y. 70, 73–74) the court said: " The mere fact that the statute itself does not in specific terms give the adjoining property owner a remedy is no bar to his invoking such a remedy in the event that he may otherwise by implication have one under the statute ".

Judge RIPPEY, in this same case, also said (p. 74): " The statute was for the special benefit of the adjoining property owner and the right to recover damages is necessarily implied ".

In *Pine Grove Poultry Farm* v. *Newtown By-Products Mfg. Co.* (248 N. Y. 293, 297) the court said: " The right to maintain an action for the breach of a statutory duty is not restricted to one suffering an injury to the person. Property rights also come within the protection of a statute imposing a duty for the benefit of the general public."

Priorities Regulation 33 provides priorities assistance to carry out the Veterans' Emergency Housing Program which calls for the construction of moderate and low-cost housing accommoda-

tions to meet the needs of returning veterans and members of the armed forces, and was designed to protect these veterans against profiteering. It would seem therefore that under these authorities the plaintiffs in this case would have a clear right to bring this action for damages sustained by them through violation by this defendant of the priorities regulation. It would also seem to follow both from the pleadings and the proof in this case, that the plaintiffs would be entitled to recover on the theory that in the written application of the defendant herein to the Federal Housing Administration the said defendant made certain promises among which was the following: " I further certify that I will construct the project in accordance with the description given in this application, that I will observe the restrictions on sales prices * * * as specified in items 4 or 5 of this application." Item 4 specified the maximum sales price as $9,850. In consideration of these promises so made by this defendant the Federal Housing Administration granted to this defendant a priority rating which enabled the defendant to obtain materials which otherwise it could not have received. Clearly these promises were exacted of this defendant not for the benefit of the Federal Housing Administration but for those whom the administration was specifically charged to protect, those whom it was sought to benefit by the provisions of Priorities Regulation 33. The purchasers of these buildings, the plaintiffs herein, come within that beneficiary clause and would seem to have the clear right to recover the excess paid by them over and above the maximum sales price.

The builder, the defendant herein, certainly knew in each instance that brokerage commissions were being paid and the mere fact that it stated in the contract of sale that there was no broker does not relieve him from this commission payment which he knew and acquiesced in, since the commissions should have been included within the maximum sales price. The plaintiffs should be allowed to recover any amounts they paid in such commissions.

For the reasons above stated I find that the plaintiffs herein are entitled to recover against the defendant.

The plaintiffs were damaged as follows: Byron Cantrell and Jocelyn Cantrell in the sum of $1,400. Gilbert Zimmerman and Lou Zimmerman in the sum of $2,400, and Henry Shorr and Mildred Shorr in the sum of $1,650.

I direct that the plaintiffs may have judgment against the defendant in the respective sums above named.

Ten days' stay.